COVINGTON, Chief Judge.
Plaintiffs, David P. Norton and Tammie Norton, filed suit individually and as administrators of the estate of their minor daughter, Whitnee Norton, against Darrin K. Lewis, Price LeBlanc, Inc. d/b/a Price LeBlanc Toyota, Royal Insurance Company, and State Farm Mutual Automobile Insurance Company. The original petition alleged that Darrin K. Lewis was an omnibus insured under a policy of insurance issued by Royal Insurance Company to Price LeBlanc, Inc., and was at fault in causing a collision between his vehicle and the vehicle driven by Dorothy G. Hitt and owned by William P. Norton, in which Tammie Norton (Hitt’s daughter and Norton’s daughter-in-law), and her infant daughter, Whitnee, were passengers. State Farm Mutual Automobile Insurance Company was sued as uninsured/underinsured motorist carrier on the Norton vehicle.
In subsequent amending petitions, John R. Hitt and Dorothy G. Hitt were named as additional plaintiffs and Champion Insurance Company was named as the uninsured/underinsured motorist carrier for the Hitts; United Fire & Casualty Company, the personal umbrella liability carrier for William P. Norton, was named as defendant; and negligence was alleged against Royal Insurance Company through its subsidiary Globe Indemnity Company[1], *681 and Price LeBlanc, Inc., in the event Darrin K. Lewis was found not to have permission to drive the Price LeBlanc vehicle involved in the accident and thus not covered as an omnibus insured under the Globe policy.
All parties agreed to a bifurcated trial of the case on the issues of the legal cause/ fault for the automobile accident; whether the policy of insurance issued by Globe to Price LeBlanc, Inc., afforded coverage for Lewis; and whether Price LeBlanc was liable to plaintiffs for any negligence or fault. After trial, the court issued written reasons and found that Darrin K. Lewis was solely at fault for the accident, but found that he drove the Price LeBlanc vehicle without permission and therefore there was no insurance coverage afforded under the Globe policy. Price LeBlanc and Globe filed a motion for partial new trial to obtain a ruling on the issue of Price LeBlanc’s negligence; the trial judge issued an amended judgment in accordance with oral reasons finding that Price LeBlanc was not negligent. Plaintiffs then filed a motion for new trial for reargument for the specific purpose of having judgment rendered in favor of all four plaintiffs rather than only Dorothy Hitt. Final judgment was signed in favor of all plaintiffs against Darrin K. Lewis.
Plaintiffs appeal from the amended judgment finding that Price LeBlanc was not negligent, and that Globe’s insurance policy in favor of Price LeBlanc did not afford coverage for the accident at issue herein; plaintiffs do not appeal from the portion of the judgment finding Darrin K. Lewis to be solely at fault in causing the accident. State Farm also appealed from the trial court’s judgment, as did United Fire & Casualty Company.[2] Louisiana Insurance Guaranty Association, as statutory successor to Champion Insurance Company, filed a brief as a precautionary measure. Globe Indemnity Company and Price LeBlanc, Inc., filed a brief in this court.
Plaintiffs and State Farm assign as error the trial court’s finding that Lewis did not have the initial permission of his employer, Price LeBlanc, to drive its vehicles, and that, therefore, there was no coverage under the Globe policy for this accident. Plaintiffs and State Farm argue that the jurisprudential “initial permission” rule dictates that we find that Darrin K. Lewis was an omnibus insured under the Globe policy. They further assign as error the trial court’s finding that there was no negligence on the part of Price LeBlanc, arguing that Price LeBlanc was negligent in having no policy or procedures for monitoring the use of vehicles by employees.
FACTS
Defendant, Darrin K. Lewis, worked at the time of the accident for Price LeBlanc, Inc., as a “lot porter” for the used car division. His duties consisted of moving cars around the lot, parking the cars, putting gasoline in them, occasionally picking up a customer, washing the cars, driving the cars when their batteries needed charging, picking up parts at the parts store, and other tasks. Lewis had worked for the dealership on two separate occasions, and had never been a discipline problem, according to Brent LeBlanc, general sales manager of Price LeBlanc and a part owner of the company.
It was disputed at trial whether Lewis was working on the day of the accident. He had not “punched in” on the day before the accident or on the day of the accident, according to personnel records, but it was established at trial that employees frequently did not punch in and were still paid if their supervisors could verify that they had worked. In any event, he had attended Marine Reserve drill on the Friday morning before the accident. He arrived at the dealership around 1:30 or 2:00 P.M., wearing his work uniform, according to his testimony. He started washing cars, and had *682 driven two cars off the lot to put gas in them. He testified that he spoke with Danny Boudreaux, one of the used car salesmen, and Boudreaux said he had a car with bad brakes. Lewis told Boudreaux that he was going to go get a tuxedo, a corsage, and a haircut, and he would take the car to see if the brakes worked. He planned to attend a prom that night. He then got the keys to the 1984 Cutlass Sierra from the board where they were kept, took the car, and left.
Lewis had picked up his tuxedo and had his hair cut, and was on his way to buy a corsage and return to the dealership when he crossed the center line of La. 621 and collided with the Norton vehicle head-on. It was undisputed at trial that Lewis caused the accident, which resulted in serious injuries to Dorothy Hitt and Tammie Norton, as well as minor injuries to Whit-nee, Tammie Norton’s infant daughter. Dorothy Hitt testified that the Cutlass was already in her lane of travel when she saw it and she had no time to react.
After the accident, Lewis fled the scene. A witness testified he saw him running away from the car and asked where he was going; Lewis replied he was going to call the police. Lewis testified that he experienced a “flashback” causing him to believe he was still in his Marine Reserve drill, and he headed towards a small stream in a wooded area and climbed a tree. He descended from the tree around daybreak, and his grandmother told him that the state police had called, and they knew he was driving the car, and wanted to speak with him. Lewis went to the sheriffs office and met with the police. He was charged with unauthorized use of a vehicle by the authorities.
The primary issue disputed at trial was whether Lewis had permission to drive the 1984 Cutlass Sierra on the day of the accident. In written reasons for judgment, the trial judge stated, “In this case the court finds as a fact that Lewis had neither express nor implied authority to use the particular vehicle in question. The court also finds as a fact that Lewis had no permission to drive any car except as was necessary to display and service cars on the used car parking lot as needed for business purposes and to drive cars off the lot only with permission whether for business or any other purpose.” We agree with these factual findings.
Brent LeBlanc, the general sales manager for Price LeBlanc and a part owner of the company, testified that the only employees authorized to grant permission to drive the vehicles were any member of the LeBlanc family, or any of the sales managers. For the used car division of the dealership, at that time the two sales managers were David Campbell and Kerry Manuel. Kerry Manuel had only been working for about a week before the accident happened. To drive vehicles off the lot for business purposes, the sales managers were able to give permission to other employees. For personal purposes, permission had to be granted from a member of the LeBlanc family, either directly or indirectly. There were no written policies in effect; however, other employees had been terminated in the past for taking cars without permission. On one occasion a staff meeting had been held, at which Lewis was present, to reiterate company policy following an incident in which a lot porter had taken a car without permission. As lot porter, Lewis did have permission to move the cars around the lot.
Kerry Manuel testified that he never told Lewis that he could not take cars off the lot without permission. When he asked Lewis to do a specific job, he expected that that specific job would be done, and permission was granted for that purpose. He had seen Lewis on the lot the day of the accident, and thought it was strange because he was not supposed to be working that day. He could not remember if he was wearing his work uniform or not.
Lewis testified that nobody ever told him he could not take cars off the lot without express permission. He testified he had taken a car overnight before, with the permission of David Campbell, one of the two used car sales managers, and had taken a car to buy tennis shoes and to run other personal errands in the past. He took cars *683 off the lot ten to fifteen times per day. If he was running a personal errand, he would simply tell one of the salesmen. He had seen 'other employees using cars for personal reasons. Any time he felt it was necessary, he could take a car. He also testified that he knew somebody else had been fired for taking a car without permission.
A former salesman, John Brignac, testified that David Campbell was a very “laid-back” sales manager who would probably have granted permission to employees to use cars for personal reasons. Brignac testified that it was against company policy to take a car overnight. He testified that once Lewis arrived in the morning, his job was to make sure that cars were running ’ right; if that meant to get in the car and drive it down the road a mile or two, that was his job.
Danny Boudreaux testified that, as a salesman, he had no authority to grant permission to employees to use company cars. He contradicted Lewis’ testimony concerning the conversation the two of them allegedly had the day of the accident, in which Lewis told him he was going to get a corsage, a haircut and a tuxedo and take the car out to check the brakes. He could not remember if Lewis was working that day, and denied that he had given him permission to take the car.
Alfred Aultman, another lot porter who held the same position as Lewis for the new car division, testified that he had been told numerous times not to take cars without permission. He remembered a staff meeting after another lot porter had taken a ear without permission. He would always check with a manager before driving a car off the lot to charge the battery, or to get gas; he might stop to get lunch, but he did no other personal errands. On cross-examination, he admitted he had sometimes taken a car and run personal errands when he was on a business mission for Price LeBlanc.
David Campbell was not on duty the day of the accident. Campbell, a used car sales manager, was frequently referred to throughout the trial, but was not called as a witness. Brent LeBlanc testified that he was not sure where Campbell was at the time of trial, but had heard he was living in Florida. He had made no efforts to locate him.
LAW
Plaintiffs and State Farm argue, in essence, that because Darrin K. Lewis had permission to drive cars around the used car lot at Price LeBlanc, he had implied permission to take cars off the lot for any purpose whatsoever, and therefore, under the terms of Globe Indemnity’s policy, he was an omnibus insured. The pertinent policy language reads: “b. Anyone else is an insured while using with your permission a covered auto.... ” Plaintiffs rely upon the “initial permission” rule to argue that Lewis had “initial permission” to drive the car and such permission was extended to the use of the car which gave rise to the accident at issue.
The “initial permission” rule was first enunciated in the Supreme Court opinion Parks v. Hall, 189 La. 849, 181 So. 191 (1938), in which a similar omnibus insured clause was interpreted to cover a chauffeur of the insured, who had taken the insured’s vehicle out for his own purposes, having completed his regular duties, and was involved in an accident. The Supreme Court held,
We therefore conclude that the permission of the assured to Hall to use the car in the first instance, irrespective of the use to which he put the car while in his possession, was ‘permission of the assured’ within the meaning and contemplation of the ‘omnibus clause’ and the insurer is therefore liable to plaintiffs thereunder.
181 So. at 194. (Emphasis in the original).
The rule was affirmed subsequently in such cases as Waits v. Indemnity Insurance Company of North America, 215 La. 349, 40 So.2d 746 (1949), in which a driver who was employed by the named insured and who had permission to use a truck to transport laborers to various points on a railroad right-of-way, but who took the *684 truck, against direct orders to use it only for work, several hours after it had been parked for the night, and went on a “pleasure jaunt” with several friends, was found to be an omnibus insured when he was involved in an accident. In Moore v. Travelers Indemnity Company, 284 So.2d 165 (La.App. 3rd Cir.), writ denied, 286 So.2d 365 (La.1973), a seminary employee who had been expressly instructed not to drive a pickup truck off the seminary grounds, and who became involved in an accident away from the grounds, was found to have permission and therefore to be covered under the omnibus clause of the owner’s automobile policy.
However, in Scoggins v. Agricultural Insurance Company, 161 So.2d 438 (La.App. 4th Cir.1964), a vehicle left in a body shop overnight for repairs was driven by the owner of the shop after hours and was involved in an accident. The owner of the shop testified he had driven the car because his foreman had asked him to do a “road test” on it; however, the evidence was clear that no authorization had been given to drive the car for that purpose. The court found that once the car was back at the body shop after being taken there by the foreman, the “initial permission” had expired. Likewise, in Revolta v. Allstate Insurance Company, 273 So.2d 645 (La.App. 4th Cir.1973), a young boy who worked in a car wash and who took a car he was washing away from the car wash while its owner was next door, and caused an accident, was found not to have permission to drive the vehicle on the street; his permission was limited to operating the car through the wash bay and onto an apron to dry and vacuum the car.
In Gathe v. Aetna Casualty & Surety Company, 345 So.2d 117 (La.App. 1st Cir.), writ denied, 346 So.2d 709 (La.1977), Re-volta was distinguished; in Gathe, the youth who worked repairing automobiles was found to have permission to roadtest the car on the street after repairs had been made and was therefore an omnibus insured.
Plaintiff bears the burden of proof that the driver of the car had either express or implied permission to drive the vehicle; generally, implied permission arises from a course of action by the named insured involving acquiescence in, or lack of objection to, the use of the vehicle. Francois v. Ybarzabal, 483 So.2d 602 (La.1986); Wolfe v. Employers Commercial Union Insurance Company, 272 So.2d 714 (La.App. 3rd Cir.1973). In this case, we do not believe plaintiffs carried their burden of proof that Lewis had permission to drive the car.
Although Lewis may have had blanket permission to drive the cars on the lot, such permission does not equate under these facts to permission to drive the cars out on the street without specific authorization from a supervisor. Each witness who testified, with the exception of Lewis himself, was clear that authorization to drive the cars off the lot had to come from a supervisor and had to be granted for a specific purpose or business errand. On the day of the accident, Lewis testified he had permission to take the car out to “roadtest” its brakes; however, Boudreaux, who would not in any event have had authority to grant permission for this mission, denied that he had granted it. We believe that the facts of this ease are similar to Revolta, where the employee had permission only to drive the car through the car wash, not onto the street, and to Scoggins, where permission ended when the vehicle was left for repairs. No pattern of acquiescence, or lack of objection to unauthorized driving of vehicles by low-level employees, was shown at trial on the part of Price LeBlanc which would tend to prove permission. On the contrary, every employee who testified indicated that permission would not be available for personal errands and had to be granted expressly even for a business purpose. Plaintiffs failed to prove that on the day of the accident, Lewis was even working, much less that he had permission to take the car out for “roadtesting” and, ultimately, for personal errands. We agree with the trial court that the “initial permission” rule cannot be extended to these facts.
*685 Plaintiffs further argue, however, that Price LeBlanc was negligent because keys to some 150 used cars were kept accessible to all employees and all employees could take cars without being detected. In effect, plaintiffs argue that a situation was allowed to exist at Price LeBlanc which facilitated Darrin K. Lewis’ actions in taking the car without permission and causing serious injuries to the plaintiffs.
We believe plaintiffs failed to prove such a situation existed. Brent LeBlanc testified that he and his family were “very visible” at the dealership during the day, and that he personally worked over sixty hours a week. There was no inventory of the cars physically every day, but certainly, as Danny Boudreaux testified in his deposition, “Once you’re there 10-12 hours a day, everyday, you’ll notice if something’s missing, you know. And usually management knows when somebody’s coming or going— which it’s supposed to know anyway — .” Even had the cars been left unlocked with the keys inside, in violation of the “lock statute,” LSA-R.S. 32:145, this would not of itself constitute negligence. Town of Jackson v. Mounger Motors, Inc., 98 So.2d 697 (La.App. 1st Cir.1957); DeCastro v. Boylan, 367 So.2d 83 (La.App. 4th Cir.), writ denied, 369 So.2d 458 (La.1979). The cars were locked every night and the keys locked, and an inventory was made every thirty to sixty days.
Plaintiffs rely upon Batiste v. Boh Brothers Construction Company, Inc., 404 So.2d 1348 (La.App. 4th Cir.1981), in which defendant was found liable when children, playing on an unattended bulldozer, started it up and caused property damage. ⅛ Batiste, however, there was evidence that the bulldozer had been started up on previous occasions. The defendant was found liable on the basis that it had failed to secure the bulldozer under circumstances where it was foreseeable that children might tamper with it. The court specifically distinguished those cases where no liability was found when an unattended car, with its keys in the ignition, was driven off by an unauthorized person and injury occurred some distance away due to the negligence of the unauthorized driver. In contrast, the court analogized the bulldozer accident to a scenario in which an owner of a vehicle left it unattended and running for a few minutes and a child put the car in gear and caused damage to a third person. The present case, which deals with a business operation which requires that vehicles be accessible to employees every day, bears no resemblance to this scenario. Under these circumstances, it was not negligent for the keys to be kept in a non-public area accessible to all employees.
The judgment of the trial court is affirmed. All costs are to be assessed to plaintiffs.
AFFIRMED.

. The proper corporate entity is Globe Indemnity Company; we shall refer to this defendant as *681 Globe throughout the rest of this opinion.

. A dispute concerning coverage under the United Fire policy was not at issue in this bifurcated trial and is not before us on appeal. An appeal was taken by United Fire merely as a precaution. Champion Insurance Company's policy was likewise alleged to be canceled for nonpayment; that issue was not tried in this bifurcated trial and is not before us in this proceeding.