623 So.2d 874 (1993)
David P. NORTON, et al.
v.
Darrin K. LEWIS, et al.
Nos. 92-C-2178, 92-C-2180.
Supreme Court of Louisiana.
September 3, 1993.
Rehearing Denied October 7, 1993.
Guy A. Modica, Carey J. Guglielmo, Daniel J. Balhoff, Baton Rouge, for applicant.
John S. Thibaut, Baton Rouge, for respondent.
DENNIS, Justice.[*]
The essentially factual question presented is whether an automobile dealer's liability insurance policy afforded coverage for the dealer's off-duty employee, who caused a head-on collision while running personal errands in the dealer's car, because the employee was using the vehicle with the permission of the dealer under the omnibus clause of the insurance policy. The trial court, although finding that the employee was wholly at fault in causing the accident, rejected plaintiffs' suit against the dealer's liability insurer, finding that plaintiffs had conceded that the employee was not in the scope and course of employment and had failed to prove that the employee had initial permission to use the car prior to the accident. The court *875 of appeal affirmed. 604 So.2d 679. We granted certiorari because the court of appeal's opinion indicated a possible misapplication of the "initial permission" rule. After reviewing the record, however, we conclude that the court of appeal judgment should be affirmed as having reached the correct result. The trial court found that the employee in fact did not work on the day of the accident and was not on duty when the collision occurred. The trial court further found that the employee had not been given express or special permission to use the vehicle to run personal errands prior to the accident. These findings of fact were reasonable interpretations of the conflicting evidence and therefore were not manifestly erroneous. Therefore, the trial court correctly concluded that the presumption of continued permission that normally flows from initial permission was not available because of the plaintiffs' failure to prove initial permission in this case.
Beginning with Parks v. Hall, 189 La. 849, 181 So. 191 (1938), our courts have repeatedly construed the word "permission" in an omnibus clause of a liability insurance policy in its broadest possible sense. Once permission, whether express or implied, to use a motor vehicle is established it is given a wide and liberal meaning in determining coverage. So long as the initial use of the vehicle is with the consent, express or implied, of the insured, any subsequent changes in the character or scope of the use do not require additional specific consent of the insured; coverage will be precluded only where the deviation from the use consented to amounts to theft or other conduct displaying utter disregard for the return or safekeeping of the vehicle. Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746 (1949); Dominguez v. American Casualty Co., 217 La. 487, 46 So.2d 744 (1950); McConnell v. Travelers Indemnity Co., 248 La. 509, 180 So.2d 406 (1965); Carey v. Ory, 421 So.2d 1003 (La.App. 3rd Cir. 1982), writ denied, 426 So.2d 178 (La.1983); Hughes v. Southeastern Fidelity Ins. Co., 340 So.2d 293 (La.1976); Gathe v. Aetna Casualty, 345 So.2d 117, 119 (La.App. 1st Cir.1977); Moore v. Travelers Indemnity Co., 284 So.2d 165 (La.App. 3rd Cir.1973); see Allstate Ins. Co. v. Jensen, 109 N.M. 584, 788 P.2d 340 (1990); Motor Club Fire & Casualty Co. v. N.J. Mfr's Ins. Co., 73 N.J. 425, 375 A.2d 639 (1977).
The primary justification for the "initial permission" rule is that it effectively furthers the state's policy of compensating and protecting innocent accident victim from financial disaster. Moreover, its application serves to discourage collusion between lender and lendee in order to escape liability and to greatly reduce a most costly type of litigation. Parks v. Hall, 189 La. 849, 181 So. 191 (1938); Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746 (1949); Dominguez v. American Casualty Co., 217 La. 487, 46 So.2d 744 (1950); McConnell v. Travelers Indemnity Co., 248 La. 509, 180 So.2d 406 (1965); Carey v. Ory, 421 So.2d 1003 (La.App. 3rd Cir.1982), writ denied, 426 So.2d 178 (La.1983); Milbank Mut. Ins. Co. v. U.S. Fidelity, 332 N.W.2d 160, 166 (Minn. 1983); Fields v. Western Preferred Cas. Co., 437 So.2d 344 (La.App. 2d Cir.1983).
In our opinion, the narrower "minor deviation" and "conversion" rules followed by some jurisdictions, which make coverage turn on scope of the permission given in the first instance, render coverage uncertain, foster unnecessary litigation, and do not comport with our state's legislative policy of assuring an available fund for the innocent victims of automobile accidents. See Direct Action Statute, La.R.S. 22:655; Compulsory Liability Insurance Law, La.R.S. 32:861 et seq.; and Financial Responsibility Law, La.R.S. 32:891 et seq.; Perkins v. McDow, 615 So.2d 312, 315 (La.1993); Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746 (1949); Dominguez v. American Casualty Co., 217 La. 487, 46 So.2d 744 (1950); McConnell v. Travelers Indemnity Co., 248 La. 509, 180 So.2d 406 (1965); Carey v. Ory, 421 So.2d 1003 (La.App. 3rd Cir.1982), writ denied, 426 So.2d 178 (La.1983); Fields v. Western Preferred Cas. Co., 437 So.2d 344 (La.App. 2d Cir.1983); see Motor Club Fire & Casualty Co. v. N.J. Mfr's Ins. Co., 73 N.J. 425, 375 A.2d 639, 644 (1977); see generally Annotation, 5 A.L.R.2d 600; 6C Appleman, Insurance Law and Practice § 4353 et seq. *876 (1979); 12 Couch on Insurance § 45:341 et seq. (2d ed. 1981).
In particular, our direct action statute expressly declares our state's public policy that liability insurance is issued "for the benefit of all injured persons" and that it is the purpose of all liability policies to give protection and coverage to all insureds, including "insureds under the omnibus clause," La.R.S. 22:655; our compulsory liability insurance law requires, in general, that every motor vehicle registered in this state shall be covered by an automobile liability policy with liability limits as defined by our financial responsibility law, which expressly provides that a "Motor Vehicle Liability Policy" shall insure the named insured and "any other person ... using [a covered vehicle] with the express or implied permission" of the named insured. La.R.S. 32:861(A)(1); La.R.S. 32:900(B)(2); see Perkins v. McDow, 615 So.2d 312, 315 (La.1993); Fields v. Western Preferred Cas. Co., 437 So.2d 344 (La.App. 2d Cir.1983).
Because the fact of initial use with permission must be established to make the policy coverage effective, however, it must be proved as any fact by a preponderance of the evidence. No presumption burdens or aids either party in the trier of fact's weighing of the testimony and other evidence on this point. Continental Casualty Co. v. Quebedeaux, 234 F.2d 241, 242 (5th Cir.1956); see also Francois v. Ybarzabal, 483 So.2d 602 (La.1986); Wolfe v. Employers Commercial Union Insurance Company, 272 So.2d 714 (La.App. 3rd Cir.1973).
In the present case, the plaintiffs sought to prove that the automobile dealer Price Le-Blanc, Inc. had given its employee Darrin Lewis initial consent to use the vehicle involved in the accident in two different ways. First, they resorted to a theory of implied consent. Lewis' job of used car lot porter required him to wash, refuel, arrange, and maintain some 150 used cars that the dealer offered for sale. Price LeBlanc necessarily gave its implied consent to the employee to use and operate the cars for these work-related purposes. The vehicle that the employee was driving at the time of the accident was one of Price LeBlanc's used cars that the dealer had placed on its lot for sale. The plaintiffs contended that the dealer, therefore, necessarily gave its implied consent to the employee to use the car for any of his work-related purposes; that the employee had used the car for the work-related purpose of checking its brakes; and that under the initial permission rule no additional specific consent was necessary to maintain coverage when the employee changed the character and scope of use of the vehicle in order to get a haircut and pick up a tuxedo and a corsage for personal social purposes. Second, resorting to a theory of express consent, the plaintiffs contended that, before Lewis used the car for the dual purpose of checking its brakes and running personal errands, he obtained express permission to use the vehicle for these specific purposes from Danny Boudreaux, who was one of Lewis' supervisors.
The trial court, however, resolved the evidentiary and ultimate factual issues to the contrary. The trial court found that Lewis did not perform any work for the dealer on the day of the accident, did not ask for and obtain permission to use the car from his supervisor, and therefore did not receive implied or express initial consent to use the vehicle before the accident. The evidence adequately supports the trial court's factual findings as reasonable and not manifestly erroneous. It was not disputed that Lewis was absent from work while on military reserve duty the day before and the morning of the day of the accident. The employee appeared at the dealer's premises during the afternoon of the day of the accident, but the payroll records indicated that he did not clock in for work that day. Additionally, Kerry Manuel, a lot manager for Price Le-Blanc at the time of the accident, testified that Lewis was not scheduled to work that day. Boudreaux, the supervisor that the employee claimed had given him permission to use the car for work and personal purposes, testified that he had neither granted nor been asked for such permission. He testified that he could not recall if Lewis even worked that day. The trial court expressly found the employee's testimony to be generally not credible. Among other reasons, the trial court discredited the employee's testimony *877 because of the explanation he gave for his disappearance following the accident. He claimed that he ran from the accident scene to get help, suffered flash-backs of his basic training days, followed a stream, and spent several hours asleep in a tree.
Several other questions should be disposed of in brief. (i) The trial court's written reasons for judgment state that the plaintiffs conceded that the employee was not acting within the course and scope of his employment at the time of the accident. The plaintiffs did not assign error as to this finding in the court of appeal or this court. Moreover, this issue was subsumed and foreclosed by the trial court's finding that the employee did not perform any work-related functions on the day of the accident. (ii) The decisions of the trial and appellate courts that the automobile dealer was not guilty of any actionable independent negligence that was a cause in fact or legal cause of the accident are affirmed for the reasons assigned by those courts. (iii) We do not approve of any portion of the court of appeal opinion or any case discussed therein that suggests a rule narrower than or in conflict with the initial permission rule stated in this opinion.
For the reasons assigned, the judgment of the court of appeal is affirmed.
AFFIRMED.
NOTES
[*] Calogero, C.J. not on panel. Rule IV, Part 2, § 3.