PLOTKIN, Judge.
12Plaintiffs, Stanley Blackman Sr., Tara Jackson, and Stanley Blackman Jr., appeal a trial court judgment granting a motion for summary judgment in favor of defendant, State Farm Mutual Automobile Insurance Co. In granting the motion for summary judgment, the trial court found that deposition evidence presented by the plaintiffs was not competent and thus was insufficient to overcome State Farm’s evidence that the driver of a hit-and-run vehicle which caused injury to the plaintiffs when it struck the plaintiffs’ vehicle was not a permissive user and thus was not covered under the omnibus clause of the State Farm insurance policy covering the vehicle and its owner. We reverse.

Facts

The accident occurred at approximately 2 p.m. on December 17, 1994 on Basin Street in the City of New Orleans. The plaintiffs’ ear was struck by a 1994 gray Isuzu pick-up truck, which did not stop after the accident. A witness to the accident, Jacque Morial, *80 followed the vehicle and recorded the vehicle license |-¡number. Thereafter, the plaintiffs reported the accident to the New Orleans Police Department. Officer Moses Pettis, a follow-up investigator with the NOPD, conducted an investigation and learned that the vehicle was owned by Howard Eggerton, a resident of Pineville, Louisiana, and that it was being driven at the time of the accident by Blaine A. Hertz.
As result of the accident, the plaintiffs filed suit against Hertz, Eggerton, and State Farm Automobile Insurance Co., Eggerton’s insurer, claiming coverage under the omnibus clause of the State Farm policy. State Farm filed a motion for summary judgment, claiming that Hertz was not a permissive user of Eggerton’s vehicle, and thus was not covered under the policy. After reviewing the motion and the opposition, as well as affidavits attached to the motion and depositions attached to the opposition, the trial court granted the motion for summary judgment, dismissing the plaintiffs suit against State Farm. The plaintiffs appealed.

Motion for summary judgment

The standard for reviewing a motion for summary judgment was most recently stated by this court in Daniel v. Blaine Kern Artists, Inc., 96-1348 (La.App. 4th Cir. 9/11/96), 681 So.2d 19, as follows:
Appellate courts review summary judgments de novo. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. In determining whether an issue is “genuine,” courts cannot, consider the merits, make credibility determinations, evaluate testimony or weigh evidence.
Procedurally, the court’s first task on a motion for summary judgment is determining whether the moving party’s supporting documents — pleadings, deposition, answers to interrogatories, admissions and affidavits — are |4 sufficient to resolve all material factual issues.. LSA-C.C.P. art. 966(B).
Op. at 20.
If the court finds that a genuine issue of material fact exists, summary judgment must be rejected. Walker v. Kroop, 96-0618 (La. App. 4th Cir. 7/24/96), 678 So.2d 580, 584. Thus, the burden does not shift to the party opposing the summary judgment until the moving party first presents a prima facie case that no genuine issues of material fact exist. Id. At that point, the party opposing the motion must “make a showing sufficient to establish existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.” La. C.C.P. art. 966(C).
This court has previously gone on record to say that the 1996 amendments to La. C.C.P. art. 966(C) do not change the existing law concerning genuine issues of material fact and burdens of proof applied to a summary judgment proceeding. See Daniel, 96-1348, 681 So.2d at 20; Walker, 96-0618, 678 So .2d at 585; Short v. Giffin, 96-0361 (La.App. 4th Cir. 8/21/96), 682 So.2d 249, 253. However, the amendment did make a change in the law to the extent that it now proclaims that summary judgments are “favored” and thus the rules should be liberally applied, requiring courts to change their attitudes when reviewing motions for summary judgment from the attitudes required under the pre-amendment jurisprudence which proclaimed just the opposite — that summary judgments were not favored and thus should be strictly construed. The language of the amendment tracks the language of Federal Rule of Civil Procedure 56, and is designed to allow courts to decide whether enough evidence exists to go to trial, thus giving judges an opportunity to weed out meritless litigation.
| gMoreover, .once a party seeking a summary judgment properly supports the motion and carries his burden of proof, the new law requires the non-moving party who opposes the motion for summary judgment to submit evidence showing the existence of specific facts establishing a genuine issue of material fact, effectively shifting the burden of proof to the non-moving party as does the federal rule. This creates a problem because La. C.C.P. art. 966(G) declares that “notwithstanding any other provision of this Arti- *81 ele to the contrary, the burden of proof shall remain with the mover.” The effect of the amendment, however, is that the non-moving party is no longer allowed to rely on the allegations of its pleadings in opposition to a properly-supported motion for summary judgment. Those changes in the law impact the instant case, where the moving party has carried its burden of proof and the case turns on whether the non-moving party has submitted competent evidence to show the existence of a genuine issue of material fact.

“Initial •permission rule”

Under Louisiana law, determination of whether a driver other than the owner of a vehicle is a permissive driver for purposes of coverage under the owner’s omnibus insurance coverage depends on the “initial permission rule,” which has been construed very liberally by Louisiana courts. The Louisiana Supreme Court’s most recent statement on this issue is found in Manzella v. Doe, 94-2854 (La.12/8/95), 664 So.2d 398, as follows:
Under an automobile liability insurance policy provision referred to as an “omnibus clause,” insurance coverage is expanded to include persons who are using the insured’s vehicle with the insured’s express or implied permission. In Louisiana, such insurance coverage is statutorily mandated for policy holders and those who post security as proof of financial responsibility. See Aisole v. Dean, 574 So.2d 1248, 1251 (La.1991). Specifically, La. R.S. 32:900 requires 16all motor vehicle liability policies to include an omnibus clause which insures the person named therein and “any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named in-sured_” La. R.S. 32:861(B) requires a person who posts a motor vehicle liability bond to satisfy “[a]ll judgments rendered against him or any person responsible for the operation of the obligor’s motor vehicle with express or implied consent....”
In the seminal case of Parks v. Hall, 189 La. 849, 181 So. 191 (1938), this court addressed what constitutes permission in an omnibus clause and adopted the “initial permission” rule. Under this rule, once consent, express or implied, is granted by the insured to use the vehicle, any subsequent changes in the character or scope of the use do not require additional specific consent of the insured. Norton v. Lewis, 623 So.2d 874, 875 (La.1993). Thereafter, “coverage will be precluded only where the deviation from the use consented to amounts to theft or other conduct displaying an utter disregard for the return or safekeeping of the vehicle.” Id. There are at least three justifications for this rule: (1) “it effectively furthers the state’s policy of compensating and protecting innocent accident vietimfe] from financial disaster[,]” (2) the rule “serves to discourage collusion between lender and lendee in order to escape liability!,]” and (3) the rule “greatly reducefs] a most costly type of litigation.” Id.
The plaintiff has the burden of proving the fact of initial use with express or implied permission of the insured to make coverage effective under the omnibus clause. Francois v. Ybarzabal, 483 So.2d 602, 605 (La.1986); Perkins v. McDow, 615 So.2d 312 (La.1993). Moreover, the fact of initial permission must be proved by a preponderance of the evidence without the aid of any presumptions. Norton, 623 So.2d at 876. Generally, implied permission “arises from a course of conduct by the named insured involving acquiescence in, or lack of objection to, the use of the vehicle.” Francois, 483 So.2d at 605.
Id. at 401-402.
The Manzella case involved an alleged unauthorized use by a person authorized to use the vehicle during working hours in a specified place. However, the “initial permission rule” has also been applied to use by a sub-permittee in the most recent case on the issue. See Mahaffey v. State Farm Mutual Automobile Insurance Co., 95-641 (La.App. 3d Cir. 2/28/96), 679 So.2d 129. Thus, the analysis applied to the Manzella case also applies to the instant case.

Genuine issues of material fact

Initially, this court is required to determine whether State Farm’s supporting documents — pleadings, deposition, answers to in *82 terrogatories, admissions and affidavits — are sufficient to resolve all material factual issues. LSA-C.C.P. art. 966(B). Given the liberal interpretation of the “initial permission rule,” State Farm is required to prove that the deviation from the use Eggerton consented to “amounts to theft or other conduct displaying an utter disregard for the return or safekeeping of the vehicle.” Man-zella, 664 So.2d at 402.
Attached to State Farm’s motion for summary judgment are affidavits signed by Eg-gerton, the owner of the vehicle, Daniel P. Monroe, Eggerton’s roommate who unquestionably had been given permission to drive the vehicle to New Orleans; and Mitchell Muse, who had accompanied Monroe to New Orleans and was occupying the vehicle at the time of the accident. Eggerton stated by affidavit that he loaned his pick-up truck to Monroe to travel to New Orleans, but that he did not given anyone else permission to drive it on the date of the accident. Additionally, Eggerton said, he specifically did not give Hertz permission to operate his vehicle at any time under any circumstances; thus, the operation of the vehicle by Hertz was “completely unknown to and unauthorized” by him.
Monroe’s affidavit verifies that Eggerton gave him permission to drive the vehicle to New Orleans, and asserts that Hertz “took the keys to the pick-up truck” from Ron Cooper’s residence, where Monroe was staying, without Monroe’s knowledge and permission and without asking permission to drive the pick-up 18truck. Monroe stated, by deposition, that he in fact had not given any person permission to drive the vehicle or to take the keys from the residence. He testified that he would have denied permission to anyone asking to use the pick-up truck that day.
Finally, Muse’s affidavit confirms Monroe’s assertion that Hertz took the keys to the pick-up truck, but acknowledges that he went with Hertz for a ride in the pick-up truck. Muse testified that he assumed that Hertz had received Monroe’s permission to drive the vehicle although he personally had not seen or heard Monroe give such permission.
Taken alone, the affidavits filed by State Farm are sufficient to carry State Farm’s initial burden of proof under La. C.C.P. art. 966(B) and remove this incident from the “initial permission rule” because the “deviation from the use consented to amounted] to a theft or other conduct displaying an utter disregard for the return or safekeeping of the vehicle.” Manzella, 664 So.2d at 402. Thus, this court must to go to the next step and consider the documents filed by the plaintiffs to determine whether they “make a showing sufficient to establish existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.” La. C.C.P. art. 966(C).
Thus, the burden shifts to the plaintiffs to prove that Eggerton gave his implied permission through “a course of conduct ... involving acquiescence in, or lack of objection to, the use of the vehicle.” Id. Attached to the opposition to the motion for summary judgment filed by the plaintiffs are the depositions of NOPD Officer L.J. Smith, who took the initial report on the hit-and-run accident, and Officer Pettis, who did the follow-up investigation. Officer Pettis testified by de: position that he mailed a letter to Mr. Egger-ton, who replied by telephone. Officer Pettis testified as follows:
|9[Eggerton] called me on January 23, stated that he had loaned the vehicle to a friend, Daniel P. Monroe, a white male, 4/19/60 date of birth, who resided with him at that time in Pineville, Louisiana. They drove the car to New Orleans. He loaned it to a friend, Mitchell Muse, a white male aged 30, from Alexandria, Louisiana; who loaned it to a young man he had met in the quarter by the name of Blaine or Blake, who turned out to be a Blaine A. Hertz.
Later in his deposition, Officer Pettis also made the following statements:
According to what [Eggerton] told me, [Muse] did let the young man drive the vehicle; and if Pm not mistaken, he was supposedly too drunk to drive, so he loaned it, he let the other fellow drive.
*83 He met the gentleman in the Quarter, he was drunk, so he let this young man drive it to go back to the house.
We find that Officer Pettis’s deposition testimony is sufficient to raise a genuine issue of material fact concerning the application of the “initial permission rule.” If Hertz’s driving of the vehicle resulted from permission given by Muse, who had received permission from Monroe, who had received permission from Eggerton, Hertz was a permissive driver under the “initial permission rule” and is covered under the omnibus clause of the State Farm policy at issue. Thus, State Farm is not entitled to summary judgment.

Competence of evidence

In granting the motion for summary judgment, the trial court refused to consider the depositions attached to the plaintiffs’ opposition, stating as follows in his reasons for judgment:
The evidence submitted in opposition to the Motion for Summary Judgment is not competent evidence and is inadequate to raise a genuine issue of material fact.
Presumably, the trial court found that the deposition testimony given by Officers Smith and Pettis was hearsay. Generally, affidavits or other documentary evidence |10based on the knowledge of someone other than the affiant do not set forth admissible evidence because such are allegations are pure hearsay. See Roberts v. Orpheum Corp., 630 So.2d 914 (La.App. 4th Cir.1993); Benoit v. Burger Chef Systems, 257 So.2d 439 (La.App. 1st Cir.1972).
However, under the Louisiana Code of Evidence, the statements made in Officer Pettis’s deposition are not hearsay. La. C.E. 801(D)(2)(a) provides specifically that the following statements are not hearsay: “A statement ... offered against a party [which] is ‘[h]is own statement, in either his individual or a representative capacity.’ The jurisprudence interpreting this provision indicates that Officer Pettis’s deposition testimony fits this definition of a statement which is not hearsay.” See Malmay v. Sentry Insurance Co., 550 So.2d 366 (La.App. 3d Cir.1989) (state trooper allowed to testify concerning statements made by defendant driver).
Moreover, Officer Pettis’s deposition testimony may also be characterized as admissible under the exception to the hearsay rule pertaining to statements against interest. La. C.E. art. 804(B)(3) defines a statement against interest as follows:
A statement which was at the time of its making so far contrary to the declarant’s pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true.
Although all of the current Louisiana jurisprudence interpreting La. C.E. art. 804(B)(3) deals with criminal cases, the definition quoted above includes statements subjecting the declarant to civil liability. We find the statements made by Eggerton to Officer Pettis were statements against interest in the instant case.
| n Conclusion
Because Officer Pettis’s deposition testimony in the instant case was competent evidence, it may be considered in deciding whether the plaintiffs met their burden to “make a showing sufficient to establish existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.” La. C.C.P. art. 966(C). We find that the plaintiffs did make the required showing to prove the existence of a genuine issue of fact, making summary judgment inappropriate in this case. Accordingly, the trial court judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED; REMANDED.