726 So.2d 459 (1999)
Ernest TROSS
v.
WINDSOR INSURANCE COMPANY, Chicago Insurance Company, Jean S. Higgins and Dameon Dixon.
No. 98-CA-617
Court of Appeal of Louisiana, Fifth Circuit.
January 26, 1999.
James E. Brouillette, New Orleans, Attorney for Appellant.
Nicholas J. Lorusso, Metairie, Attorney for Appellees.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
This lawsuit arises from an intersectional collision. The main issue on appeal is whether *460 the defendant driver was a permissive user of the car he was operating. We affirm the trial court's finding that the defendant driver did not use the car with permission of its owner, which means we also affirm the finding of liability against the uninsured motorist insurer of the plaintiff driver. We reverse, however, the trial court's award to the plaintiff of reimbursement of the deductible he paid for repair of his property damage.
The accident occurred on April 10, 1996 at the intersection of Huey P. Long Avenue and Eleventh Street in Gretna. Plaintiff, Ernest Tross, was driving his 1990 Cadillac in a westerly direction on Eleventh Street. He reached its intersection with Huey P. Long Avenue, a four-way stop, halted, and looked both ways. He saw no approaching vehicles and proceeded across. As he was partway through the intersection, however, his car was struck by a northbound Toyota which failed to stop at the stop sign. The Toyota, owned by defendant Jean Higgins and driven by defendant Dameon Dixon, fled the scene immediately after the accident.
Ernest Tross sued Damean Dixon as driver of the vehicle which struck Tross's car, Jean Higgins as owner of the vehicle, Regal Insurance Company as insurer of Higgins' vehicle,[1] and Chicago Insurance Company as plaintiff's own uninsured motorist insurance carrier. The trial judge found there was no credible testimony to refute the plaintiff's version of the accident and that the plaintiff did not violate any traffic laws that contributed to the accident. The court concluded that the actions of Dixon were the sole legal cause of the accident and the resulting damages and injuries.
The court found that Higgins, the owner of the Toyota, did not know Dixon and had not given him permission to use her vehicle, nor had permission been given to him by Higgins' grandson nor by the grandson's girlfriend, with whom Higgins had temporarily left the car. The court concluded that Dixon was an unauthorized user of the Toyota and, as such, he was not covered under Higgins' insurance as a permissive user. The court rendered judgment in favor of plaintiff and against Dixon and Chicago Insurance Company, plaintiff's uninsured motor insurance (UM) carrier, in the amount of $8,603.00.
Chicago Insurance has appealed. Appellant contends the trial court erred in failing to find coverage under the Regal policy (Higgins' insurer) when Dixon was a permissive use driver of the Higgins vehicle and in awarding plaintiff his $250 deductible against Chicago Insurance Company as his UM carrier when the Chicago policy at issue did not include payments for uninsured motorist property damage.

PERMISSIVE USE
The question of whether Dameon Dixon was an insured under Higgins' Regal Insurance Company policy depends on whether he was driving her Toyota with her permission when he was involved in the accident in question.
The Regal policy provides that the company will pay damages "for which an insured is legally liable because of bodily injury or property damage resulting from the ownership, maintenance or use" of the insured car. For purposes of liability coverage the policy defines insured in "Part A-Liability" as follows:
As used in this Part, "Insured(s)" means:
1. You or a relative for the ownership, maintenance or use of any car or utility trailer.
2. A person using your insured car with your express or implied permission....
No person shall be deemed an insured unless you have given them express or implied permission to use your insured car upon a public roadway. If you have not given such person permission to use your insured car on a public roadway, such person shall be deemed an insured only if their actual use of your insured car is within the scope of the permission granted.
*461 Coverage under such an "omnibus clause" is statutorily mandated in Louisiana. La. R.S. 32:900(B)(2); Manzella v. Doe, 94-2854 (La.12/8/95), 664 So.2d 398, 401. Since 1938 Louisiana has followed the "initial permission" rule, set forth in Parks v. Hall, 189 La. 849, 181 So. 191, 194 (1938). Once consent, express or implied, is granted by the insured to use the vehicle, any subsequent changes in the character or scope of the use do not require additional specific consent of the insured. The initial permission rule extends omnibus insurance coverage to those persons who operate a vehicle with the express or implied consent of the insured. Manzella v. Doe, supra, at 402.
Such permission is given a wide and liberal meaning in determining coverage. Norton v. Lewis, 623 So.2d 874, 875 (La.1993). If the initial use of the vehicle is with the insured's consent, whether express or implied, then any subsequent changes in the character or scope of the use do not require additional specific consent of the insured. Id. Coverage will be precluded only where the deviation from the use consented to amounts to theft or other conduct displaying utter disregard for the return or safekeeping of the vehicle. Id.
The plaintiff has the burden of proving the fact of initial use with express or implied permission of the insured to make coverage effective under the omnibus clause. Francois v. Ybarzabal, 483 So.2d 602, 605 (La.1986). "Absent express permission, implied permission generally arises from a course of conduct by the named insured involving acquiescence in, or lack of objection to, the use of the vehicle." Id.
The question of implied permission is determined by whether it was reasonably foreseeable that the first permittee would allow someone else to drive the automobile.... Where the named insured gives permission to another to use the car as his own, the possibility that the permittee might allow another to drive the car is clearly foreseeable.
Perkins v. McDow, 615 So.2d 312, 315-316 (La.1993).
With regard to whether Dixon had Higgins' express or implied permission to use her vehicle, the trial court made the following findings:
Even though there was some confusion as to dates and times, two years post incident, the credible testimony presented is that Mrs. Higgins ... on April 9, 1996, dropped off said Toyota at her grandson's apartment so that his girlfriend, Kendra Clark, could bring it to Ray Brandt Toyota for service on the next morning. At some point during the morning of April 10, 1996, the defendant Dameon Dixon, took Mrs. Higgins' Toyota and was involved in the complained of accident. Dameon Dixon, in his deposition, admitted using the vehicle and being involved in the accident.
Mrs. Higgins did not know Dameon Dixon and she did not give him permission to drive her vehicle. Kendra Clark testified that she did not give Dameon Dixon permission to drive the vehicle. Mrs. Higgins grandson, Calvin Higgins, did not give Dameon Dixon permission to drive the vehicle. It is apparent that Dameon Dixon, while visiting at the apartment of Calvin Higgins and Kendra Clark, removed the keys from the apartment and left with the car without the knowledge and consent of Kendra Clark or Calvin Higgins.
* * *
Here, we have less than a borrower. We have an unauthorized use by Dameon Dixon. Consequently, it is clear that Mrs. Higgins did not entrust the Toyota to Dameon Dixon. Plaintiff's argument of Mrs. Higgins' negligent entrustment is not applicable to this case, and the court finds that Dameon Dixon was an uninsured driver and not covered under Mrs. Higgins' liability policy.
Factual findings by the trial court may not be set aside unless they are clearly wrong. Mistich v. Volkswagen of Germany, Inc., 95 0939 (La.1/29/96), 666 So.2d 1073, 1077. The appellant argues that "blatant inconsistencies" in the testimony of Jean Higgins and Calvin Higgins make their versions of the facts not credible, so that the trial court's findings must be reversed.
*462 Appellant asserts that Jean Higgins gave her grandson and his girlfriend permission to use her vehicle without limitations and she never instructed them not to allow other people to drive it. Dameon Dixon admitted he did not have specific permission from Calvin Higgins to borrow the car on the day of the accident. He said he had been allowed to use the car on other occasions, however, so he "figured ... it was cool" to use it on that morning. In contrast, Calvin Higgins testified he had allowed Dixon's brother to use the car occasionally, but denied that he ever gave Dixon permission to use the vehicle. Calvin stated, however, that he didn't feel that Dixon had stolen the vehicle or was doing anything wrong in borrowing it.
Appellant also points to a conflict in testimony as to when Jean Higgins learned of the accident. Melvin Ripp, an attorney representing Ernest Tross, testified by affidavit that he contacted Jean Higgins about the accident on April 19, 1996, approximately nine days after it occurred, at which time she told him her grandson had loaned the car to Dameon Dixon. At trial, however, Mrs. Higgins denied making such statements to Ripp and also claimed that she first became aware of the accident when Ripp telephoned her. That statement contradicted her grandson's deposition testimony. Calvin Higgins testified in his deposition that his grandmother telephoned him the day of the accident and inquired whether her car had been involved in an accident. At trial, however, he claimed he had been confused at his deposition as to when he found out Dixon had taken the car.
Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly wrong.... Where the factfinder's conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.... The reviewing court must always keep in mind that if a trier of fact's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if convinced that if it had been sitting as trier of fact, it would have weighed the evidence differently.
Mistich v. Volkswagen of Germany, Inc., supra, 666 So.2d at 1077.
The two-part test for reversal of a factfinder's determination requires that the appellate court first must find from the record that a reasonable factual basis does not exist for the finding of the trial court; the appellate court then must determine that the record establishes that the factfinder is clearly wrong (manifestly erroneous). Id., 666 So.2d at 1077-1078.
In reviewing this testimony and the record as a whole, we are unable to find the trial court was manifestly erroneous. The trial judge's conclusions were based on determinations regarding credibility of the witnesses and, thus, entitled to great deference. We are unable to say that his view of the evidence was impermissible and, therefore, we cannot say he was clearly wrong.

REIMBURSEMENT OF DEDUCTIBLE
Chicago Insurance also appeals the portion of the judgment which awarded the plaintiff $250.00 reimbursement for his collision deductible payment. Appellant contends plaintiff was not entitled to reimbursement for the deductible because his UM coverage did not include uninsured motorists property damage.
The record contains a copy of the declarations page of the Chicago Insurance Company policy, but does not contain a copy of the full policy. Accordingly, we are unable to determine the precise language of the policy's UM clause. The declarations page, however, states, "Coverage is provided where a premium and a limit of liability is shown for the coverage." Under the listing of coverages, the declarations page shows coverage and premium amounts for C, Uninsured Motorists/Underinsured Motorists Coverage. Attached to the declarations page is a copy of an endorsement which deletes one of the vehicles shown on the declarations page. The endorsement form contains blanks for entry of liability limits and premium amounts for the various coverages. Next to "Uninsured/Underinsured *463 Motorist,", it lists limits and a premium amount. There is a separate blank for Uninsured Motorist Property Damage, however, which lists no limits or premium amount.
The Louisiana uninsured motorist coverage law, La. R.S. 22:1406(D), requires that all automobile liability insurance policies must provide coverage "for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom." La. R.S. 22:1406(D)(1)(a)(i). The exception is where the insured rejects such coverage or selects lower limits in writing. The law does not require that the UM coverage also insure property damage, but allows the insured to request coverage for property damage to the covered vehicle if the policy does not afford collision coverage. La. R.S. 22:1406(D)(1)(d). The coverage provided by the law, however, "shall be subject to a deductible in an amount of two hundred fifty dollars for any one accident."
Thus, whether we rely on the Chicago Insurance policy's declaration page and endorsement, or on the basic law underlying the UM coverage, plaintiff was not entitled to recover the $250 deductible he paid. Accordingly, that portion of the judgment must be reversed.
For the foregoing reasons, the judgment is reversed insofar as it found Chicago Insurance liable for $250.00 for the plaintiff's collision deductible. In all other respects the judgment is affirmed. Judgment hereby is rendered accordingly.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.
NOTES
[1] Regal Insurance Company was incorrectly designated as Windsor Insurance Company in the petition.