McDonald, j.
I pThe issue presented in this appeal is whether insurance policies issued by American National Property and Casualty Insurance Company, Louisiana (ANPAC-LA), provided coverage for the loss sustained by the plaintiffs. The plaintiffs in this matter, Raymon and Debra Hartzo, filed suit against American National Property & Casualty Insurance Company[2] and Allstate Insurance Company[3] (Allstate) for damages sustained when their daughter, Chandra Hartzo, was killed in an automobile accident. ANPAC issued automobile liability policies to Charles Larmon for his 1993 Mercury Sable, and to Amy Le-tard, as the named insured on the policy *1122 covering the 1996 Ford Taurus, which Charles was driving at the time of the fatal accident.[4]
ANPAC-LA filed a motion for summary judgment asserting that neither of the policies issued by it provided coverage because Charles did not have express or implied permission to drive the Ford Taurus at the time of the accident. The trial court granted the motion, ANPAC was dismissed from the suit with prejudice, and the judgment was certified as a final judgment in accordance with La. C.C.P. art. 1915. Both the plaintiffs and Allstate appealed the judgment. For the following reasons, we reverse.
PROCEDURAL AND FACTUAL BACKGROUND
At approximately 1:00 a.m. on April 15, 2004, a 1996 Ford Taurus driven by Charles Larmon collided with a 2000 Toyota Tacoma operated by Laura Chustz. Chandra Hartzo was a passenger in the Chustz vehicle. The |sFord Taurus was owned by Nicole Larmon[5], Charles’s sister, and, as noted, was insured by an automobile liability policy issued by ANPAC-LA identifying the named insured as Amy K. Letard (Goldsby), who was Charles and Nicole’s stepsister.
Three separate policies of insurance are involved in this litigation. ANPAC-LA issued policy number 17-V-J97-555-4 to Charles Larmon on his personal vehicle, a 1993 Mercury Sable. ANPAC-LA also issued the policy of insurance on the vehicle that Charles was driving at the time of the accident, the Ford Taurus. Although this policy, number 17-V-J97-226-1, was issued to Amy, the record reflects that the Ford Taurus was actually titled in Marilyn Larmon’s name. The third policy was issued by American National General Insurance Company (ANGIC) to Neida Larmon, Charles and Nicole’s mother, insuring Nei-da’s personal vehicle.
ANPAC-LA filed a motion for summary judgment[6] seeking a declaratory judgment that neither of the policies of insurance issued by ANPAC-LA provided coverage because Charles did not have permission from either the named insured or the owner of the Ford Taurus to operate that vehicle. In support of its contention that Charles did not have express or implied permission to operate the Ford Taurus, therefore there was no insurance coverage, ANPAC-LA submitted the depositions of his parents, Frank Larmon and Neida Larmon, and Nicole Larmon, and the affidavits of Amy Letard (Goldsby), Marilyn Larmon, Amy’s mother and Charles’ stepjmother,4 and Kirby McKenzie, an underwriting manager employed by American National Property and Casualty Company whose duties include supervision of underwriting functions for ANPAC-LA. The Hartzos filed an opposition to the motion, relying on the same evidence.
*1123 Both ANPAC insurance policies contained the same language and policy definitions, and, at issue here, is the following:
(I) “You” and “your” mean the Policyholder named in the Declarations and spouse, if living in the same household.
(5) “Insured” or “Insured person” means the person, persons, or organization defined as an insured person in or with reference to a specific coverage.
(6) “Non-owned car” means a car, utility vehicle, or utility trailer not owned by, in whole or in part, or furnished or available for the regular use of either you, your spouse, or a relative. It does not include a temporary substitute car.
(10) “Relative” means a person living with you and related to you by blood, marriage, or adoption, including your ward or foster child, provided neither the relative nor the relative’s spouse owns, in whole or in part, a car.
(II) “Temporary substitute car” means a car or utility trailer not owned by you or a relative being temporarily used with the owner’s permission as a substitute for your insured car because of its withdrawal from normal use due to its breakdown, repair, servicing, loss, or destruction.
(14) “Your insured car” means:
(a) the car described in the Declarations for which a premium is shown;
(b) a temporary substitute car;
ADDITIONAL DEFINITIONS USED IN PART I ONLY
As used in this Part, “insured person” means:
(1) with respect to your insured car:
(a) you or a relative;
(b) a person using your insured car if its use is with your express or implied permission; and
(2) with respect to a non-owned car:
(a) you or a relative, provided the use is with the express or implied permission of the owner;
|sNo person shall be considered an insured person if that person uses your insured car without your express or implied permission.
(Emphasis in the original.)
On the day of the accident, and for several months prior, Charles and Nicole resided with their mother. On that day, Charles’s car was in the shop, so when he and Nicole went out to eat, Nicole drove them in her car. After dinner, Charles and Nicole went to a friend’s house; Charles drove at Nicole’s request because she had too much to drink. Upon leaving there, Nicole drove Charles to another friend’s house, then went home, and shortly thereafter, to bed. She heard Charles return home, but did not speak to him. The keys to Nicole’s car were in her purse on the kitchen table. Without asking Nicole, Charles left the house in Nicole’s car and was involved in the accident. The deposition testimony of Nicole was that Charles could not use her car without permission, which she had sometimes given in the past, and sometimes withheld.
At the summary judgment hearing, AN-PAC-LA argued that there were no material facts in dispute, and the facts established that Charles did not have either express or implied permission to drive the Ford Taurus. Therefore, in accordance with the terms of the automobile liability insurance policy, there was no insurance *1124 coverage. Plaintiffs argued that the policies at issue were ambiguous as to whether Charles was a relative shown as an insured driver on the declarations page of the policy, and there was a genuine issue of material fact as to whether Charles had implied permission from Nicole to drive the car. In oral reasons for judgment, the trial judge noted “[tjhis is a complicated case... and it’s a hard one to decide.” After listening to argument and examining all the evidence, the judge found that there was |fino insurance coverage under either of the ANPAC-LA policies and granted the motion for summary judgment.
This appeal was timely filed by both the plaintiffs and Allstate, which would be liable to the Hartzos under the uninsured motorist provision of their automobile liability policy if no insurance coverage was provided by the ANPAC-LA policies.
LAW AND ANALYSIS
Appellants assert that Louisiana cases deciding whether permission was given to trigger insurance protection under the omnibus clause[7] of an automobile liability policy favor finding permission to protect innocent victims. This court is asked to review the law and the facts and find that Charles had the implied permission of Nicole to drive the vehicle at the time of the accident. Alternatively, this court is asked to determine that the trial court improperly granted summary judgment in favor of ANPAC because there are genuine issues of material fact in dispute.
ANPAC-LA sets forth the undisputed facts, and argues that the insurance policies at issue here are not ambiguous; under these facts, the policies do not provide coverage. ANPAC-LA cites the supreme court’s language in Louisiana Ins. Guar. Ass’n v. Interstate Fire & Cas. Co., (La.1/14/94), 630 So.2d 759, 763, stating “Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to enforce reasonable conditions upon the policy obligations they contractually assume.” Further, it contends that their policies provide coverage in compliance with La. R.S. 32:900(B)(2). We |7recognize that insurers are legally allowed to limit their contractual liability. Indeed, were insurers not able to enforce reasonable conditions upon their liability, in accordance with actuarial standards and projections, their industry would be hindered in its ability to serve the important function it does in our society. However, these limits must be “reasonable,” and not against public policy. We are unable to agree with ANPAC-LA’s argument that the facts in this case, as adduced from the depositions submitted in connection with the motion for summary judgment, establish that ANPAC-LA is entitled to judgment as a matter of law.
The issue of “permission” has repeatedly entangled our courts, with the supreme court frequently being called upon to untie the knots.
In the seminal case of Parks v. Hall, 189 La. 849, 181 So. 191 (1938), this [supreme] court addressed what constitutes permission in an omnibus clause and adopted the “initial permission” rule. Under this rule, once consent, ex *1125 press or implied, is granted by the insured to use the vehicle, any subsequent changes in the character or scope of the use do not require additional specific consent of the insured. Norton v. Lewis, 623 So.2d 874, 875 (La.1993). Thereafter, “coverage will be precluded only where the deviation from the use consented to amounts to theft or other conduct displaying an utter disregard for the return or safekeeping of the vehicle.” Id. There are at least three justifications for this rule: (1) “it effectively furthers the state’s policy of compensating and protecting innocent accident victim[s] from financial disaster[,]” (2) the rule “serves to discourage collusion between lender and lendee in order to escape liability!!]” and (3) the rule “greatly reducefs] a most costly type of litigation.” Id.
Manzella v. Doe, 94-2854 (La.12/8/95), 664 So.2d 398, 402.
The “initial permission rule” can only assist us in deciding this case, however, if we find that when Nicole allowed Charles to drive her car after dinner, it constituted an initial express permission from which his use later that night was a subsequent change. The facts do not support this analysis. Having found no express permission, we must determine whether Charles’s |suse of the car at the time of the accident was with Nicole’s “implied permission.”
The parties have cited numerous cases to assist us in this endeavor. After extensive review of the jurisprudence, we agree with the concurrence of former Justice Watson in Perkins v. McDow, 615 So.2d 312, 317 (La.1993), that “these cases serve to point out the mischief caused by the permissive user provisions of automobile liability policies.” Similarly, we agree that the solution would be to hold that the permissive use clause is contrary to public policy, especially in cases involving family members living in the same household. Louisiana statutory law requires that all vehicles have liability coverage and the denial of coverage on the basis of familial prohibitions, reconstructed post-accident, fosters litigation and does not serve the state’s policy of compensating and protecting innocent accident victims.
Our review of the jurisprudence on the issue of “implied permission” also convinces us that the determination is extremely fact-sensitive and involves a balancing of legal and public policy issues that will rarely be appropriate in a motion for summary judgment. Implied permission, as opposed to express permission, must be inferred from the totality of facts and the relationships involved. On the record before us, we do not find that ANPAC-LA has established that it is entitled to judgment as a matter of law. Therefore, the portion of the judgment dismissing AN-PAC Louisiana Insurance Company with prejudice is reversed and the matter is remanded for further proceedings. Costs of this appeal are assessed against AN-PAC Louisiana Insurance Company.
REVERSED AND REMANDED.
PARRO, J., dissents and assigns reasons.

. Plaintiffs named as a defendant American National Property and Casualty; ANPAC-LA answered stating that it was erroneously named. The record reflects that American Property and Casualty Company, which uses the acronym ANPAC, is the parent company of ANPAC-LA, which issued the insurance policy covering the Ford Taurus, as well as a policy of insurance to Charles Larmon on his personal vehicle.

.Allstate Insurance Company issued the automobile liability policy covering the plaintiffs’ vehicle, and this policy provided uninsured/underinsured motorist coverage.

. Charles Larmon was also lulled in the accident.

.Summary judgment was also urged in the same motion on behalf of American National General Insurance Company, which insured a vehicle owned by Neida Larmon.

. Louisiana Revised Statutes 32:900(B)(2), referred to as the omnibus clause, requires that motor vehicle liability policies "[s]hall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle....”