# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 05-1536 c/w 05-1537


**HENRY ARCENEAUX**

**VERSUS**

**PAMELA NORMAN, ET AL.**


**ELBY JOHNSON, JR., ET AL.**

**VERSUS**

**SWIFT TRANSPORTATION CO., INC.**


\*\*\*\*\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NOS. 2002-6494-K and 2003-1656-L
HONORABLE JULES D. EDWARDS, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**SYLVIA R. COOKS**
**JUDGE**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Marc T. Amy, Judges.

**AFFIRMED.**


**0.**

Michael J. Remondet, Jr.
Donovan J. O'Pry, II
Post Office Box 91530
Lafayette, Louisiana 70509
(337) 237-4370
(337) 235-2011
COUNSEL FOR APPELLANT:
    Swift Transportation Co., Inc.

Bob Broussard
D. Patrick Daniel, Jr.
8200 East Kaliste Saloom Road, Suite 8200
Post Office Box 80827
Lafayette, Louisiana 70598
(337) 232-3333
COUNSEL FOR APPELLEES:
     Elby Johnson, Jr. and
     Denise Judice Johnson

James D. Hollier
Brandon W. Letulier
1001 W. Pinhook Road, Suite 200
Lafayette, Louisiana 70503
P.O. Drawer 52828
Lafayette, Louisiana 70505-2828
(337) 237-7000
COUNSEL FOR APPELLEE:
     Pamela Norman

Scott Dartez
Perrin, Landry, deLaunay, Dartez and Ouellet
P.O. Box 53597
Lafayette, Louisiana 70505
(337) 237-8500
COUNSEL FOR APPELLEE:
     Henry Arceneaux

**COOKS, Judge.**

## STATEMENT OF THE CASE

The trial court granted Pamela Norman's cross motion for summary judgment finding Ms. Norman, as an employee of Swift Transportation Company, Inc. had "initial permission" to operate its 18-wheeler truck and, therefore, was covered as an insured under its policy. The trial court denied Swift Transportation's motion for summary judgment relating to the same issue. Generally, the denial of a motion for summary judgment is a non-appealable interlocutory ruling. La.Code Civ.P. art. 966. However, in the interest of judicial economy, the denial of a motion for summary judgment may be reviewed in conjunction with other appealable issues. *Industrial Indem. Co. of Northwest v. Central Nat. Ins. Co. of Omaha,* 99-2535 (La.App. 1 Cir. 12/22/00), 775 So.2d 1246, writ denied, 01-225 (La.4/12/01), 790 So.2d 1. Accordingly, we will review both the denial of Swift Transportation's motion for summary judgment and the granting of Ms. Norman's motion for summary judgment.

## STATEMENT OF THE FACTS

On August 26, 2002, Henry Arceneaux and Elby Johnson, Jr. were allegedly injured while riding as passengers in an 18-wheeler truck driven by Pamela Norman and owned by her employer, Swift Transportation Company, Inc. (Swift). Ms. Norman had been hired as a truck driver by Swift the day before the accident. On the day of the accident, Ms. Norman testified she picked up Elby Johnson and Henry Arceneaux and the three drove to Golden Palace convenience store to buy alcoholic beverages. All three opened their containers of alcohol and began drinking and driving around in the Swift vehicle. Ms. Norman testified she was aware of Swift's policy prohibiting the transporting of people in the truck and the consuming of alcohol while driving. Ms. Norman testified Mr. Johnson suggested how they could

3

make money if they staged an accident in the Swift truck. Ms. Norman testified extensively about Mr. Johnson's idea about staging an accident, how much money they could get and how they could each use the money. She testified Mr. Johnson attempted to talk her into putting the truck into drive and letting it hit a telephone pole near the convenience store. She also testified Mr. Arceneaux stated they should hit a low brick wall instead of a telephone pole. According to Ms. Norman, Mr. Johnson was smoking marijuana in the truck. Ms. Norman admitted to drinking alcohol, but denied smoking marijuana because of the company's drug testing policy.

After a couple of hours, the group ran out of alcohol and they drove back to the convenience store to purchase more. Ms. Norman testified, as they rode past a street corner where individuals were selling drugs, Mr. Johnson asked to be dropped off because one of the individuals owed him money. When she refused to stop the truck, Mr. Johnson opened the door and jumped out. She stopped the truck and went around to assist him. She testified he appeared to be uninjured but refused to get back in the truck. She left Mr. Johnson and Mr. Arceneaux on the side of the road, drove to Mr. Johnson's house and told his wife, Denise, to pick them up.

Mr. Johnson and Mr. Arceneaux tell a different story. They claim the only one drinking on the day of the accident was Ms. Norman. Mr. Johnson stated when he saw Ms. Norman with a can of beer he "freaked out" and demanded to be let out of the vehicle. As Mr. Johnson was attempting to exit the vehicle, Ms. Norman accelerated causing him to fall to the ground where he sustained injuries. Mr. Arceneaux alleges he was looking back at Mr. Johnson when Ms. Norman applied the brakes causing him to fall forward hitting the dashboard. Mr. Johnson and Mr. Arceneaux sued Pamela Norman and Swift Transportation Company, Inc. for injuries sustained in the accident.

4

Swift filed a Motion for Summary Judgment alleging: (1) Pamela Norman was not in the course and scope of her employment at the time of the accident; (2) Swift did not negligently entrust the vehicle to Ms. Norman; and (3) Ms. Norman was not a "permissive user" of the Swift vehicle. The trial court granted Swift's motion on the first two issues finding Ms. Norman was not in the course and scope of her employment with Swift at the time of the accident and Swift had not negligently entrusted its vehicle to Ms. Norman. However, the trial court found Ms. Norman was a permissive user of the Swift vehicle and was covered as an insured under the Swift policy. Swift appeals on the issue of coverage for Ms. Norman. We note the ultimate liability of Swift for the injuries allegedly sustained by Mr. Johnson and Mr. Arceneaux is not at issue in this appeal. This appeal is limited to the issue of coverage. Based on our review of La.R.S. 32:900(B)(2), and related jurisprudence, we conclude, Ms. Norman was given initial permission to drive the Swift vehicle and is covered as an insured under the Swift policy. Therefore, we affirm the decision of the trial court.

## LAW AND DISCUSSION

Swift contends the terms of the Swift policy excludes Ms. Norman from coverage. Specifically, Swift argues the language in the policy requires that liability arise out of "operations performed" for the named insured. The Swift policy states:

ADDITIONAL INSURED ENDORSEMENT

IT IS AGREED:

(1) The "Persons Insured" provision is amended to include as an insured any person, organization or entity to whom the named insured is contractually obligated to provide such coverage, but only with the respect to liability arising out of operations performed for such insured by or on behalf of the named insured.

Additionally, Swift contends that the operator of the vehicle must use the

5

vehicle with the permission of the named insured and the operation or use of the vehicle must be within the scope of that permission. The Swift policy provides:

**III.** PERSONS OR ENTITIES INSURED

B. Each of the Following is an Insured Under This Policy to the Extent Set forth Below:

(1) any person while using, with the permission of the Named Insured, any automobile owned by, loaned to or hired for use by or on behalf of the Names insured and any person or organization legally responsible for the use thereof, provided actual operation or other actual use is within the scope of such permission.

Swift contends Ms. Norman's conduct and the alleged accident did not arise out of "operations performed" for her employer and the vehicle was being used outside the scope of permission granted by Swift. Specifically, Swift contends: (1) Ms. Norman was prohibited from allowing guest passengers in the truck without prior written approval and consent of Swift; (2) she was consuming alcohol while driving the truck; and, (3) she was using the truck for personal use. Because she was beyond the scope of permission, Swift argues, it cannot be held liable under the express terms of the policy.

However, in Louisiana "under an automobile liability insurance policy provision referred to as an "omnibus clause," insurance coverage is expanded to include persons who are using the insured's vehicle with the insured's express or implied permission." *Manzella v. Doe,* 94-2854, p. 4 (La. 12/8/95), 664 So.2d 398, 401. Louisiana Revised Statutes 32:900(B)(2) mandates that every policy of insurance include an omnibus clause within its coverage.

Louisiana Revised Statutes 32:900 provides, in relevant part:

B. Such owner's policy of liability insurance:
. . . .
(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the *express or implied permission* of such named insured against loss from the

liability imposed by law for damages arising out of the maintenance, or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs with respect to each such motor vehicle as follows:

Once "initial permission" is established by the plaintiff, insurance coverage is provided regardless of whether the accident occurred during "operations performed" for the employer or whether the vehicle was being used "within the scope of permission" granted by the owner. *Parks v. Hall*, 181 So. 191 (La.1938). In *Parks*, the Louisiana Supreme Court first articulated the scope of the "initial permission" rule. In *Parks,* Harvey Hall was employed as a chauffeur for Mr. Gans. The accident occurred when Mr. Hall deviated from the duties of his employment and was on a private errand. The court of appeal found since Mr. Hall was not within the course and scope of his employment, his employer was not liable under the theory of respondeat superior. Moreover, the court of appeal found because Mr. Hall's employer did not authorize Mr. Hall's private use of the vehicle, the vehicle was not being legally operated with the owner's permission and, therefore, the insurer was not liable under the omnibus coverage clause. The Louisiana Supreme Court granted writs and annulled the appellate decision, stating:

> If Hall, at the time of the accident, had been operating the car while attending to his regular duties, washing the car, or as instructed by his employer, then the injury would have been caused while acting within the scope of his employment and Gans would be liable under the rule of respondent superior and the omnibus coverage clause in the policy would have no application. Under such circumstances, the insurer would be primarily liable under Act No. 55 of 1930.

> Under the facts of this case, Hall was operating the car with the permission of the assured and the policy, by its express terms, i.e., the omnibus clause, was made to cover, as an assured, any one who was driving the car with the permission of the owner of the insured car. The provisions of the policy do not limit the liability thereunder to causes arising when the permitted driver was using the car either for the owner's business or under any restricted circumstances. The language is not restricted, but used in its broadest possible sense and under the rules of construction generally applicable in cases of this kind, we must

7

give the language used the same broad construction. The words used in the clause would be practically meaningless and the object there made nugatory if it were necessary to determine in every case whether, at the time and under the circumstances of the accident, the driver was proceeding within the limitations of the permission of the assured to use the car.

. . . .

We therefore conclude that the *permission of the assured* to Hall *to use the car in the first instance*, irrespective of the use to which he put the car while in his possession was '*permission of the assured' within the meaning and contemplation of the 'omnibus clause'* and the insurer is therefore liable to plaintiffs thereunder.

*Id.* at 858-859.(Emphasis in original.)

The courts "repeatedly construed the word 'permission' in an omnibus clause of a liability insurance policy in its broadest possible sense. Once permission, whether express or implied, to use a motor vehicle is established, it is given a wide and liberal meaning in determining coverage." *Norton v. Lewis*, 623 So.2d 874, 875 (La.1993). Insurance coverage is precluded only when it is shown the deviation amounts to theft or conduct displaying an utter disregard for the return or safekeeping of the vehicle. *Id.* The justification for extending coverage even when the driver deviates from the scope of the permission was articulated by the supreme court in *Norton,* as follows:

The primary justification for the "initial permission" rule is that it effectively furthers the state's policy of compensating and protecting innocent accident victims from financial disaster. Moreover, its application serves to discourage collusion between lender and lendee in order to escape liability and to greatly reduce a most costly type of litigation.

*Id.* at 875. *See also, Manzella v. Doe,* 94-2854, (La.12/8/95), 664 So.2d 398.

The plaintiff has the burden of proving express or implied permission of the insured in order to obtain coverage under the omnibus clause. *Manzella v. Doe,* 94-2854 (La.12/8/95), 664 So.2d 398. The fact of initial permission must be proved as any other fact by a preponderance of the evidence without the aid of any

8

presumptions. *Norton v. Lewis*, 623 So.2d 874 (La.1993).

After reviewing the record, we find Ms. Norman had initial permission to use the Swift truck and any deviation from the scope of permission did not amount to theft or an utter disregard for the return or safekeeping of the truck. Ms. Norman was hired as a driver for Swift the day before the accident. It is undisputed Swift gave her express permission to drive the truck for deliveries and to keep it overnight parked at her residence. While she chose to pick up friends and drive around in the Swift truck, this fact does not amount to theft or an utter disregard for the safekeeping of the truck. Swift contends the fact that she was drinking in the truck relieves it of coverage under the policy. We disagree. In *Pope v. Allstate Insurance Company*, 99-494 (La.App. 5 Cir. 11/30/99), 751 So.2d 299, Benny Freeman was employed by Stanley Smith. He was driving Mr. Smith's van when he rear-ended the plaintiff's vehicle and fled the scene. He was arrested shortly thereafter for driving while intoxicated. When Mr. Freeman did not return with the van, Mr. Smith called the police and reported the van missing. However, he did not believe Mr. Freeman had stolen the van. While it was undisputed Mr. Freeman had express permission to use the van, the insurer argued he was excluded from coverage under the "initial permission" rule because he was intoxicated at the time of the accident. The insurer argued intoxication while driving the van indicated an utter disregard for the return or safekeeping of the vehicle. The appellate court rejected this argument stating:

> The accident occurred on the same day that Mr. Freeman had permission to use the vehicle. The fact that he was intoxicated when attempting to return the vehicle does not indicate an utter disregard for the return of the vehicle. Mr. Freeman did not attempt to steal the van or keep it for an extended period of time for his own personal use. Even though Mr. Smith told Mr. Freeman not to drink on the job, the liberal construction of the statute and the definition of permission does not allow this being a deviation from the use consented to by the owner. Under the circumstances, insurance coverage is not precluded.

9

*Id.* at 302.

In *Manzella v. Doe*, 664 So.2d 398, Mr. Manzella was injured when his vehicle was rear-ended by an employee of the New Orleans Aviation Board (NOAB). The driver of the NOAB vehicle fled the scene on foot. It was undisputed the employee was not within the scope of his employment when the accident happened and the testimony established although NOAB employees had permission to use company vehicles on the grounds, permission was rarely granted to allow the vehicles to leave the airport premises. The supreme court found coverage under the policy, stating:

> Here, the trial court found that the keys were locked up or in the hands of an employee at all times; that the truck involved in the accident was not "hot wired;" and that the truck was operated with a key at the time of the accident.
> The evidence showed that the truck was driven from the maintenance yard without windows being broken and without being "hot wired." Moreover, there was no other evidence of a possible theft of the vehicle such as tampering with the steering column. Therefore, it was reasonable to infer that the driver operated the truck with a key and that the Board allowed him to have access to the truck and to one of the four keys.

*Id.* at 402.

The supreme court found once initial permission was established, "this permission continued to exist at the time of the accident, since there was no evidence that this permission was subsequently rescinded." *Id. See also Valdetero v. Commercial Union Insurance Co.,* 00-1581 (La.App. 3 Cir. 4/4/01), 782 So.2d 1210, where this court found implied permission was granted by the company even though the testimony established company personnel could only use company vehicles upon gaining specific permission from a superior and the authorized use was limited to site specific tasks. The evidence established the vehicle was kept on the company lot with the key in it in case of emergencies. The employee was joyriding at the time of the accident.

Swift cites *Campbell v. Verrett*, 02-0695 (La.App. 3 Cir. 10/30/02), 829 So.2d 1141, *writ denied*, 02-2911 (La. 2/14/03), 836 So.2d 116. This case is distinguishable from the facts in the present case. In *Campbell*, Hilton Verrett was employed at a nursery owned by Josephine Scarbrough. The nursery owned two vehicles, a Ford truck which Mr. Verrett was authorized to use solely for business purposes and a Nissan truck which he was allowed to take home and use for personal errands. One evening, Ms. Scarbrough took the Nissan truck home. Mr. Verrett left in the Ford truck and was involved in an accident. This court found Mr. Verrett was not covered under the policy stating:

> This is not a case of deviation from initial permission granted. Mr. Verrett did not deviate from permission granted to him, because, according to Mr. Verrett's testimony, he did not have any permission whatsoever to drive the vehicle that evening.

*Id.* at 1146.

We find Swift gave Ms. Norman initial permission to drive the truck. She was allowed to take the truck home and she was given permission to personalize the truck. The deviation from use on the day of the accident did not amount to a disregard for the safekeeping or return of the truck. Accordingly, we affirm the decision of the trial court denying Swift's motion for summary judgment and granting Ms. Norman's motion for summary judgment.

**DECREE**

Based on the foregoing review of the record, we affirm the decision of the trial court. All costs of this appeal are assessed to Swift Transportation Company, Inc.

**AFFIRMED.**