STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-333


ESTATE OF JERAMY LEE DAUZAT,
THROUGH ITS ADMINSTRATRIX
CHRISTINE FAYE AYMOND DAUZAT

VERSUS

EAGLE AMERICAN INSURANCE COMPANY

****************
APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, DOCKET NO. 2005-7791
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE


*************
SYLVIA R. COOKS
JUDGE
*************


Court composed Sylvia R. Cooks, Michael G. Sullivan, and Glenn B. Gremillion, Judges.


REVERSED AND REMANDED.


Kerry L. Spruill
219 North Main Street
Post Office Box 977
Marksville, Louisiana 71351
(318) 240-7501
COUNSEL FOR PLAINTIFF/APPELLANT:
    Estate of Jeramy Lee Dauzat,
    through its administratrix
    Christine Faye Aymond Dauzat

Benjamin A. Luke
Roy & Roy, P.L.L.C.
P.O. Box 363
117 E. Ogden Street
Marksville, Louisiana 71351
(318) 253-0275
COUNSEL FOR DEFENDANT/APPELLEE:
    Eagle American Life Insurance Company

**COOKS, Judge.**

## STATEMENT OF THE CASE

Christine Faye Aymond Dauzat, as Administratrix of the estate of her deceased son, Jeramy Lee Dauzat, appeals the trial court's grant of a Motion for Summary Judgment filed by Eagle American Insurance Company, dismissing her claim for the policy proceeds on a credit life policy issued to Jeramy. For the reasons assigned below, we reverse the decision of the trial court granting the summary judgment and remand for further proceedings.

## STATEMENT OF THE FACTS

In 1999, as a teenager, Jeramy Lee Dauzat, was electrocuted while crawfishing when his metal pole came in contact with a power line owned by Entergy Louisiana, Inc. As a result of the accident, Jeramy's leg was amputated just below the knee. A lawsuit was filed against Entergy by Larry and Christine Dauzat, individually and on behalf of their minor son, in the Twelfth Judicial District Court, Docket Number 98-5833-B. Shortly after the accident, on September 14, 1999, Jeramy sought treatment with Dr. L.J. Mayeaux, a family care physician. Dr. Mayeaux testified he saw Jeramy one time and found he was suffering from depression. In March 14, 2001, Jeramy sought treatment with Dr. Marshall E. Belaga, a psychiatrist. On that date, Dr. Belaga diagnosed Jeramy with depression and post-traumatic stress disorder due to the accident. During that same period of time, Jeramy suffered the loss of a brother to an accident and his sister was murdered by her ex-boyfriend. In February 2002, he was involved in an automobile accident and was treated for a cut on his head. Dr. Belaga saw Jeramy three times on March 19, 2001, November 27, 2002, and January 20, 2003. Dr. Belaga prescribed no drugs, and Jeramy did not return to the psychiatrist after January 20, 2003.

2

In September 2003, Jeramy and a friend, Brandon Payne, decided to go into business together and applied for a loan from the Cottonport Bank in the amount of $60,000. The loan officer was Shane Stout. Mr. Stout is also a licensed agent for Eagle American Life Insurance Company, which company is a wholly owned subsidiary of The Cottonport Bank. Mr. Stout approved the loan and took as collateral a $60,000 certificate of deposit held by the bank in the name of Jeramy Dauzat. Since Mr. Stout was also a licensed agent for Eagle American Life Insurance Company, he offered to sell Jeramy and Brandon "debt protection" coverage in the form of a credit life policy. Mr. Soute testified: "I asked them about debt protection or debt cancellation coverage and they asked me what it was, so I told them credit life would cover the debt in the event of one of their deaths. They asked how much it would cost. The premium was around fifteen hundred dollars. They said could we add it to the loan and I told them yes."

Four months after obtaining the loan, on January 5, 2004, Jeramy was at home with friends, Kristie Lynn Jeansonne and Sarah Elizabeth Grundy. He offered to show the girls how to play Russian Roulette. He took a pistol, placed one bullet in the chamber, spun it, lifted the gun to his head, and pulled the trigger. He was killed instantly. The coroner, Dr. Mayeaux, ruled the shooting accidental. The Cottonport Bank seized the certificate of deposit held in Jeramy's name as payment for the $60,000 loan and its subsidiary, Eagle American Life Insurance Company, refunded the premium and declined payment on the credit life policy. Christine Dauzat filed a Petition for Payment of Credit Life Insurance. Eagle American filed a Motion for Summary Judgment, asserting Jeramy failed to disclose his treatment for depression and post-traumatic stress disorder on the credit life policy application and therefore misrepresented a material fact. The Plaintiff filed a counter Motion for Summary

3

Judgment. A hearing was held on both motions, and the trial court found in favor of Eagle American Life Insurance Company. Plaintiff appeals. We reverse.

## LAW AND DISCUSSION

The Eagle American credit life policy application form contains the following health question:

> 1. Has any proposed insured ever been treated for any of the following: Heart attack, chest pain, arteriosclerosis, any disease of the heart, high blood pressure, cancer, tumors, blood disorder, diabetes, paralysis, Acquired Immune Deficiency Syndrome (AIDS), or AIDS Related Complex (ARC), or any other disorder of the immune system, any disease of lungs, brain, liver, stomach, intestines, kidney or ulcer, *mental or nervous disorder*, or any other illness or injury requiring surgery or hospital care in the past 5 years. (Emphasis added.)

Eagle American contends Jeramy checked the "No" box in response to this health question and signed the form. Eagle American argues since Jeramy was treated by Dr.Mayeaux and Dr. Belaga for depression and post-traumatic stress disorder within five years of the loan application and failed to disclose this information, he intentionally misrepresented a material fact. Eagle American seeks to avoid payment under the policy under La.R.S. 22:619.

Louisiana Revised Statutes 22:619 provides, in relevant part:

> A. Except as provided in Subsection B of this Section and R.S. 22:692, and R.S. 692.1, no oral or written misrepresentation of warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.

> B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

Under this provision, an insurer seeking to avoid recovery under a life insurance

policy has the burden of proving: (1) a false statement was made with the actual intent to deceive; and (2) the misrepresentation materially affected the risk assumed by the insurer. *Pryor v. State Farm Mutual Automobile Ins. Co.*, 95-187 (La.App. 3 Cir. 8/30/95), 633 So.2d 112; *Lincoln National Life Insurance McCollough*, 621 So.2d 204 (La.App. 3 Cir. 1993); *Swain v. Life Insurance Company of Louisiana*, 537 So.2d 1297 (La.App. 2 Cir.), *writ denied*, 541 So.2d 895 (La. 1989). The test of materiality is whether knowledge of the facts would have influenced the insurer in determining whether to assume the risk or in fixing the premium. *Pryor*, 633 So.2d 112. The standard of proof for determining whether an insured has the intent to deceive was articulated by the supreme court in *Johnson v. Occidental Life Insurance Co. of Cal.,* 368 So.2d 1032 (La. 1979), quoting *Watson v. Life Insurance Co. of Louisiana*, 335 So.2d 518, 521 (La.App. 1 Cir. 1976), as follows:

> The intent to deceive must be determined from the attending circumstances which indicate the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality thereof, or from circumstances which create a reasonable assumption that the insured recognized the materiality of the misrepresentations.

*Id.* at 1036.

A motion for summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B)(2). "A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Hines v. Garrett*, 04-0806, p. 1 (La. 6/25/04), 876 So.2d 764, 765. In the present case, Eagle American must prove Jeramy had an intent to deceive the insurer. His intent must be determined from the circumstances surrounding his application for a credit life policy. We have examined

the facts and find there is conflicting evidence as to a material fact, namely, whether Jeramy personally checked or marked the health form box or whether the form was completed by the agent and handed to him for his signature.

The Plaintiff contends Jeramy did not personally mark the "No" box on the health question. In support of this position, the Plaintiff submitted the affidavit of Brandon S. Payne. Brandon stated neither he nor Jeramy were required to complete a questionnaire concerning the state of their health. Further, he declared neither he nor Jeramy were required to read health questions or check appropriate blanks on the credit life insurance applications. Significantly, Brandon stated "he was only required to sign the application for credit life insurance at the bottom of the page in the blank provided for "Signature of Proposed Insured Debtor." It is undisputed Jeramy and Brandon went to the Cottonport Bank to apply for a business loan and were not seeking to obtain an insurance policy. In fact, Shane Stout, the loan officer and agent for Eagle American, testified *he* offered to sell "debt protection" insurance to the two boys. He had to explain to Jeramy and Brandon what a credit life policy was and that it provided for repayment of the loan. The premium of fifteen hundred dollars was added to the amount of the loan. It is also undisputed Mr. Stout was a loan officer for the Cottonport Bank and, at the same time, was an agent for Eagle American Insurance Company, which is a wholly owned subsidiary of the bank. The Plaintiff contends Mr. Stout, who was in a superior business position, filled out the application and handed it to Jeramy to sign. The facts in *Swain*, 537 So.2d 1297 are similar to the facts in this case. In *Swain*, the plaintiff's husband, Mr. Swain, purchased an automobile from Red River Motor Company. Financing was obtained through GMAC. Mr. Swain also purchased a credit life policy. The credit life policy was issued by Life Insurance Company of Louisiana and sold through its agent at the car

6

dealership, Red River Motor Company. When Mr. Swain died of lung cancer, the insurer refused to pay, asserting Mr. Swain had made false claims on the insurance application in that he was not in "sound health." Following trial, the trial court found in favor of the defendants. The appellate court reversed stating:

> Mr. Swain agreed to purchase credit life insurance at the suggestion of Mr. Shearer, an acquaintance of Mr. Swain's who worked for the defendant and was present at Red River that day. . . . [T]he car salesman asked Mr. Swain no questions about his health, although Mr. Swain was on crutches while at the dealership. Mrs. Swain was uncertain of who typed in the blanks on the credit life application form, though she did know that it was done by someone at Red River. Mr. Swain was not instructed or requested to read the credit life application form, and he did not read it. He merely signed the application when it was presented to him with the other papers that required his signature.
> . . . .
> [I]n the case of an insurance contract, when the insurance company has prepared the policy and the application form, and the insured is asked to do nothing more than sign it, the insurer cannot avoid liability on grounds that the information contained in the application was not correct.

*Id.* at 1299, 1300.

In support of its position, Eagle American offers the testimony of Shane Stout which contradicts Brandon's testimony. Mr. Stout testified he saw Jeramy complete the application and, in particular, he directed Jeramy's attention to the health questions. He asked Jeramy if he had any questions about any part of the application and witnessed Jeramy check the appropriate box and sign the form.

Eagle American also offers the affidavits of A.J. Roy, III and Daniel P. Packer, both representatives of Eagle American, and argues "had Mr. Jeramy Dauzat properly disclosed the requested health information at the time of the loan closing Eagle American Life Insurance Company would not have agreed to write a policy on behalf of Mr. Jeramy Dauzat." However, this assertion does not relieve Eagle American of its burden of proving that Jeramy deliberately deceived the company in order to obtain insurance coverage. Because of the conflicting testimony by the only two

7

persons present at the meeting, other than the deceased, we find this case is not appropriate for summary judgment. Therefore, we reverse the decision of the trial court and remand for further proceedings.

## DECREE

Based on the foregoing review of the record, we reverse the decision of the trial court granting the Motion for Summary Judgment in favor of Eagle American Life Insurance Company and remand for further proceedings. All costs of this appeal are assessed against Eagle American Insurance Company.

**REVERSED AND REMANDED.**