# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 08-636

MARK MEARS, ET AL.

VERSUS

MARK A. STANLEY, ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2006-960
HONORABLE R. RICHARD BRYANT, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**CHRIS J. ROY, SR.**[1]
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, James T. Genovese, and Chris J. Roy, Judges.

**REVERSED.**

James L. Maughan
Maughan, Maughan & Lormand
634 Connell's Park Lane
Baton Rouge, LA 70806
(225) 926-8553
Counsel for Plaintiffs/Appellants:
    Mark Mears, Individually and as Natural Tutor of his Minor Children,
    Rachel Crader, Megan Crader and Joseph Crader

---

[1]Judge Chris J. Roy, Sr. appointed judge pro tempore of the Court of Appeal, Third Circuit.

**Andrew Robinson Johnson, IV**
**Plauche, Smith & Nieset**
**P. O. Box 1705**
**Lake Charles, LA 70629**
**(337) 436-0522**
**Counsel for Defendants/Appellees:**
    **State Farm Mutual Auto. Ins. Co.**
    **Louisiana Escort and Permit Service**

**Allen J. Mitchell, II**
**Mitchell & Blanco**
**One Lakeshore Dr., Suite 1495**
**Lake Charles, LA 70629**
**(337) 436-8686**
**Counsel for Defendants/Appellees:**
    **State Farm Mutual Auto Ins. Co.**
    **Mark A. Stanley**

**ROY, Judge (pro tempore).**

The plaintiff-appellant, Mark Mears, individually and as natural tutor of his minor children, Rachel Crader, Megan Crader, and Joseph Crader, appeals the trial court's dismissal of his claims via summary judgment against the defendants-appellees, Louisiana Escort and Permit Service and its insurer, State Farm. For the following reasons, we reverse.

### FACTS

On September 22, 2005, Mears agreed to ride with his friend, Mark Stanley, an employee of Louisiana Escort and Permit Service ("Louisiana Escort"), to escort an 18-wheel tractor trailer rig carrying an oversized load from southeast Texas to Lima, Ohio. Mears was going to help with the travel expenses, and in turn, Stanley was going to pay Mears for his help after the job was completed.

The pair traveled in a vehicle owned by Louisiana Escort but used by Mears. In fact, the deposition testimony of Burchman Fruge, the owner of Louisiana Escort, explained the vehicle was "leased" to Mears, but Louisiana Escort provided the insurance for the vehicle. Company policy prohibited guest passengers while an employee was in the course and scope of his employment.

As Mears and Stanley began their escort, southeast Texas and southwest Louisiana evacuated ahead of the imminent strike of Hurricane Rita. After traveling only sixty or seventy miles in about a day-and-a-half, the truck driver whose load Mears and Stanley were escorting decided to abandon the load. He parked his rig on the side of the roadway, called someone to advise he had abandoned the load, and left.

When Stanley contacted Fruge about the situation, Fruge instructed him to

1

attend to his personal business, "including evacuating and taking refuge from Hurricane Rita." Stanley and Mears then made their way to a hunting camp near Vidor, Texas, and they rode out the hurricane in the Louisiana Escort truck.

After the storm subsided, Mears and Stanley believed their vehicle had insufficient gasoline to make the trip back to Lake Charles, where they had begun their journey, and gasoline was not available for purchase because of the hurricane. Instead, they decided to drive to the home of Stanley's father in DeQuincy, Louisiana. Mears had been monitoring the gas gauge, knew it was getting low, and said he "ain't a walking kind of fellow."

Once at Herman Stanley's home in DeQuincy, Stanley visited with his family for about an hour-and-a-half while Mears slept in the Louisiana Escort vehicle. Stanley then woke Mears and told him they would use a 1999 Ford pickup truck belonging to Stanley's father, which had a full tank of gasoline, to complete their trip to Lake Charles.

Stanley and Mears left DeQuincy in the 1999 Ford pickup and headed to Lake Charles to allow Mears to check on possible hurricane damage to his home. Mears knew of no intention to go anywhere else other than to his house.

During the trip from DeQuincy to Lake Charles, Mears was injured in a head-on collision between the 1999 pickup truck and another vehicle. Mears filed suit against Stanley, Louisiana Escort, and State Farm Mutual Automobile Insurance Company ("State Farm"). The trial court granted the Motions for Summary Judgment filed by Louisiana Escort and State Farm, concluding that Stanley was not in the course and scope of his employment at the time of the accident, thereby precluding coverage under State Farm's policy.

2

On appeal, Mears alleges the trial court erred in finding Stanley's employment mission was complete when he arrived at his father's house in DeQuincy. Mears further assigns as error the finding of no coverage by State Farm if Louisiana Escort is dismissed from the litigation, and argues the 1999 Ford pickup was a temporary substitute for the Louisiana Escort vehicle.

**MOTION FOR SUMMARY JUDGMENT**

The trial court and the parties treated the two issues as separate motions for summary judgment. First, the trial court considered the issue of whether Stanley was in the course and scope of his employment at the time of the accident and found that his employment mission ended when he and Mears reached the home of Stanley's father in DeQuincy. Thus, it granted summary judgment in favor of Louisiana Escort. Because the trial court viewed that factual finding as dispositive of the course and scope issue, it did not address the second motion, but instead assumed the finding that Stanley was outside the course and scope of his employment precluded coverage under State Farm's policy. We address each motion separately, as did the trial court.

**Standard of Review**

The appellate courts review summary judgments *de novo*, and thus, ask the same questions as the trial courts to determine whether summary judgment is appropriate. *Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So.2d 191. Summary judgment is proper only when it is inevitable that reasonable minds would conclude no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B); *Renfro v. Burlington Northern and Santa Fe RR*, 06-952 (La.App. 3 Cir. 12/6/06), 945 So.2d 857, *writ denied*, 07-303 (La.

3

4/27/07), 955 So.2d 644, citing *Natchitoches Parish Hosp. Serv. Dist. v. Rachal*, 94-995 (La.App. 3 Cir. 2/1/95), 649 So.2d 1152, *writ denied*, 95-528 (La. 4/7/95), 652 So.2d 1349. Thus, summary judgment should be rendered in favor of the movant if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show a lack of factual support for an essential element of the opposing party's claim. La.Code Civ.P. art. 966 (B) and (C). If the opposing party cannot produce any evidence to suggest he will be able to meet his evidentiary burden at trial, no genuine issues of material fact exist.

A fact is "material" when "it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of a legal dispute." *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765; *Soileau v. D&J Tire, Inc.*, 97-318 (La.App. 3 Cir. 10/8/97), 702 So.2d 818, *writ denied*, 97-2737 (La. 1/16/98), 706 So.2d 979. In deciding whether certain facts are material to an action, the courts look to the applicable substantive law. *Id.* Finally, summary judgment procedure is favored and designed to secure the just, speedy and inexpensive determination of every action. La.Code Civ.P. art. 966(A)(2).

In order to determine whether the trial court erred in granting summary judgment here, we must consider whether any disputed material facts exist regarding whether Stanley was in the course and scope of his employment at the time of the accident, and whether State Farm's policy provides coverage for the vehicle Stanley was operating at the time of the accident.

## I. Was Stanley in the course and scope of his employment?

The trial court considered the factual issue of Stanley's residence to be a material one. It granted summary judgment after deciding Stanley's employment-

4

related journey ended when he reached his father's home in DeQuincy, and Stanley's activities after that point were not "company business." Had Stanley's residence been elsewhere, particularly some point beyond Mears' residence, the trial court indicated it would have ruled differently.

As a material fact, the place of Stanley's residence was in dispute. While a movant's unanswered evidence of a material fact will ordinarily result in summary judgment being granted (La.Code Civ.P. art. 966), conflicting evidence regarding a material fact may defeat summary judgment. *Estate of Dauzat v. American Eagle Ins. Co.*, 06-333 (La.App. 3 Cir. 10/11/06), 941 So.2d 166.

Here, however, neither party had reliable evidence regarding Stanley's residence, the determination of which decided the course and scope issue for the trial court. Mears' deposition testimony indicated he and Stanley only intended to go to Mears' home to check on it after the hurricane. He testified Stanley had no place to stay, had "been bouncing around from house to house" and had been seen in Topsy. Fruge thought Stanley lived at his father's house in DeQuincy, but was not positive. Nevertheless, counsel for Louisiana Escort and State Farm represented to the trial court that Stanley was living with his father in DeQuincy at the time of the accident. In fact, neither party offered the trial court any evidence, beyond mere speculation, of Stanley's residence in DeQuincy or anywhere else. Accordingly, the trial court erred in granting summary judgment on this issue based on a finding that Stanley was outside the course and scope of his employment because the issue of Stanley's residence in DeQuincy is a genuine issue of material fact that remains disputed. However, as discussed below, the course and scope issue is not dispositive of whether State Farm's policy provided coverage.

5

**II. Does State Farm afford coverage for the vehicle involved in the accident?**

Interpretation of an insurance policy is a question of law. *Stoute v. Long*, 98-683 (La.App. 3 Cir. 12/9/98), 722 So.2d 102. This court has authority to construe the provisions of the policy in order to resolve coverage issues. *Id.*

The trial court erroneously assumed that State Farm's policy in favor of Louisiana Escort automatically precluded coverage for this accident because of the finding that Stanley was outside the course and scope of his employment. In fact, whether State Farm provides coverage depends on the policy language itself and whether the vehicle involved in the accident may be considered a temporary substitute for the Louisiana Escort vehicle.

**A. The policy provides coverage for Louisiana Escort vehicles.**

State Farm's policy, in the 6030L Business Named Insured Endorsement, defines an insured to include any permissive user of a vehicle owned by Louisiana Escort. Nothing in the policy limits coverage to situations where the operator is in the course and scope of his employment; no evidence in the record indicates Stanley was limited to using the Louisiana Escort vehicle solely for business purposes.

Indeed, the record shows Stanley had Louisiana Escort's permission to use the vehicle for non-business purposes. Although Fruge testified Stanley did not use the Louisiana Escort truck as his personal vehicle, he obviously knew Stanley used the vehicle for personal use to some extent. Stanley was paid by the mile, but only while he was actually providing escort services. Stanley was not paid for "coming back home miles," even though he obviously had to use the truck to come home. Fruge knew Stanley parked the vehicle at his house, and did not know if Stanley personally owned a vehicle. Fruge's agreement with his drivers was that he owned and insured

6

the vehicles, but they used them. Fruge's affidavit even explains that he told Stanley, immediately prior to the hurricane, "to attend to personal business, including evacuating and taking refuge," knowing Stanley would have to make personal use of the Louisiana Escort vehicle to follow those instructions.

The situation here is similar to that in *Arceneaux v. Norman*, 05-1536 (La.App. 3 Cir. 5/24/06), 931 So.2d 484, *writ denied*, 06-1629 (La. 10/6/06), 938 So.2d 76. In *Arceneaux*, a truck driver had initial permission from the vehicle's owner to use it. She was specifically prohibited from carrying passengers in the vehicle. Nevertheless, only one day after her employment, the driver picked up two passengers, and some or all of them, possibly including the driver, began drinking alcoholic beverages while driving around in the truck.

After an accident in which one of the prohibited passengers was injured, the truck's owner sought summary judgment on grounds it did not negligently entrust its vehicle, the driver was outside the course and scope of her employment, and she was not a permissive user of the vehicle. The trial court agreed the driver was outside the course and scope of her employment, but noted that the omnibus clause of the insurance policy covering the vehicle, as required by La.R.S. 32:900, included coverage for the plaintiff's claim.

That statute requires an automobile liability insurer to provide coverage to the named insured and to any other person using a covered vehicle with the express or implied permission of the named insured. This court held the policy provided coverage once the plaintiff established "initial permission," regardless of whether the driver was engaged in operations performed for her employer or whether the vehicle was used within the scope of permission granted by the owner. *Arceneaux*, 931 So.2d

7

484.

The *Arceneaux* policy, like the policy here, did not limit coverage to causes arising out of the owner's business or any other restricted circumstances. Rather, it covered claims arising out of use of the vehicle with the express or implied permission of the named insured. Because the plaintiff proved the truck's owner had given the driver initial permission to use the vehicle, coverage attached.

This case requires the same result. Regardless of whether Stanley was in the course and scope of his employment at the time of the collision, Louisiana Escort had granted him initial permission to use its vehicle. That fact was established by Fruge himself. Nothing in the policy limited its coverage to business use of the vehicle. Thus, even if Stanley was not in the course and scope of his employment, and even if he deviated from his business purpose while using the Louisiana Escort vehicle, the vehicle remained insured under State Farm's policy at all times.

**B. Is the accident vehicle a temporary substitute for Louisiana Escort's vehicle?**

Having established that the Louisiana Escort vehicle was at all times insured, the question now becomes whether the vehicle owned by Stanley's father, in use at the time of the accident in place of the Louisiana Escort vehicle, is a "temporary substitute car" as defined by the policy. The Business Named Insured Endorsement defines an insured as anyone using "a temporary substitute car if its use is with the express or implied permission" of the named insured. The policy further defines a "temporary substitute car" as one replacing an insured vehicle for a short time, whose use is with the express or implied permission of the owner when the insured vehicle is "out of use because of breakdown, repair, servicing, damage or loss."

Louisiana Revised Statutes 22:681 requires every insurance company writing

8

automobile liability coverage in the State of Louisiana to provide coverage for temporary substitute vehicles as defined by each policy, and that coverage is primary under the statute. Therefore, if the vehicle owned by Stanley's father is a temporary substitute as defined by the policy, State Farm provides primary coverage for this accident, and summary judgment in State Farm's favor was improper.

Hurricane Rita gave rise to innumerable extraordinary situations in southwest Louisiana in September of 2005. Under normal circumstances, Stanley could have simply purchased more gasoline at any number of service stations and continued his use of the Louisiana Escort vehicle. Because of the hurricane, however, virtually all of the area service stations were closed, and gasoline was nowhere to be found. A vehicle with a low or empty tank, normally an easily solved problem, thus became a vehicle that was, or soon would be, out of service.

The 1999 Ford pickup owned by Stanley's father was intended to replace the Louisiana Escort vehicle for a short time, so that Stanley and Mears could go to Lake Charles in a vehicle containing a sufficient amount of gasoline for them to do so. The record implies it was used with the permission of the owner, Stanley's father. The only remaining factor is whether the Louisiana Escort vehicle was "out of use due to its breakdown, repair, servicing, damage or loss."

Ordinarily, a vehicle low on or out of gasoline would not be considered out of use due to its servicing. Again, however, the factual circumstances of this case must be considered in making that determination. Due to the hurricane, the Louisiana Escort vehicle could not be serviced because gasoline was unavailable. The Louisiana Escort vehicle was out of use because it could not make the anticipated trip without being serviced.

9

All three factors contributing to the definition of a temporary substitute vehicle are met here. The 1999 Ford pickup replaced the Louisiana Escort vehicle for a short time with the permission of its owner while the Louisiana Escort vehicle was out of use due to its servicing. The Ford pickup therefore is a temporary substitute vehicle under the State Farm policy. Accordingly, summary judgment in favor of State Farm is improper under these facts.

## CONCLUSION

The trial court erred in granting motions for summary judgment in favor of Louisiana Escort and State Farm. Insufficient evidence was presented to support the trial court's finding that Stanley's residence was at his father's home in DeQuincy, and therefore, he was outside the course and scope of his employment at the time of the accident. Moreover, coverage under State Farm's policy is not dependent on the course and scope issue, but rather on the language of the policy. That language sets out when the policy will provide coverage for a temporary substitute vehicle, and those factors are met here. Therefore, the trial court's judgment granting the motions for summary judgment of Louisiana Escort and State Farm is reversed. All costs of this appeal are assessed against the defendants-appellees, Louisiana Escort and Permit Service and State Farm Mutual Automobile Insurance Company.

**REVERSED.**